398 A.2d 676

**COMMONWEALTH of Pennsylvania**

**v.**

**Vaughn B. GREENLEE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided Feb. 16, 1979.

478

Vincent A. Couchara, Norristown, for appellant.

Ross Weiss, First Assistant District Attorney, Elkins Park, for Commonwealth, appellee.

Before CERCONE, SPAETH and LIPEZ, JJ.

LIPEZ, Judge:

On May 17, 1974, appellant was sentenced to three to twenty-three months in Montgomery County Prison after pleading guilty to charges of receiving stolen goods and conspiracy. He was released on parole on August 18, 1974. On December 6, 1975, appellant was arrested and charged with burglary. On January 16, 1976, a parole revocation hearing was held on the burglary charge and on various technical parole violations. Appellant was found in violation of his parole and was sentenced to serve the balance of his original sentence. He then pleaded guilty to the burglary and a related charge, and was sentenced on that conviction to two to four years' imprisonment. Appellant was sent to the State Correctional Institution at Graterford to serve his sentence.

Appellant filed a Post-Conviction Hearing Act (PCHA) petition alleging that the sentence was illegal because he had been ordered to serve the burglary sentence before completing his original sentence. The PCHA hearing court

found that the order committing appellant to prison for the parole violations clearly indicated that the sentence therefor was to precede the burglary sentence.[1] The PCHA court therefore ordered, on May 24, 1977, that the records at Graterford be corrected to indicate that appellant was first to serve the balance of his original sentence and then begin the burglary sentence. The order dismissed the petition without any other relief. Appellant does not argue this issue on appeal, and in fact agrees that the court was correct:

> [T]he order of the lower court of January 16, 1976, was clear that the sentences were to be consecutive and that sentence for the parole violation was to precede the sentence for the new criminal offense."

Appellant's brief at 5.

Appellant asserts, by new court appointed counsel, on this appeal that his PCHA hearing counsel was ineffective for failing to move to amend the PCHA petition (which appellant had personally completed and filed) in order to allege ineffectiveness on the part of appellant's parole revocation hearing counsel on the grounds that *that* attorney had failed to object to the introduction, in the course of the revocation hearing, of alleged hearsay evidence concerning the burglary charge.

The standard to be applied in any consideration of alleged ineffectiveness of counsel is found in the following frequently-cited passage:

> [Counsel's] assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen had some reasonable basis designed to effectuate his client's interests. The test is not whether other alter-

---

1. The record fully and clearly supports the PCHA court's findings. The order committing appellant reads:

   AND NOW, this 16th day of January, 1976, it is hereby ordered that defendant, appearing with counsel, be sentenced to undergo *an imprisonment of not less than 2 years nor more than 4 years* and stand committed, and be sent to the State Correctional Institution at Graterford, Pennsylvania, *to date from expiration of the sentence* imposed on 1333 of 1973. (Emphasis added.)

natives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Cmwlth. ex rel. Washington v. Maroney,* 427 Pa. 599, 604–5, 235 A.2d 349, 352 (1967). We can discern no reasonable basis for the failure of PCHA counsel to move to amend the PCHA petition, which had been filed *pro se* by appellant, in order to assert a claim that parole violation hearing counsel had been ineffective for failing to object to certain hearsay testimony at the parole hearing. The record of the parole hearing alone makes out a prima facie case for a finding of ineffectiveness on the part of parole hearing counsel. At that hearing, evidence was adduced by the Commonwealth concerning both appellant's technical violations [2] and alleged new criminal offenses. Appellant admitted the technical violations under direct examination,[3] but did not testify regarding the burglary. The only evidence regarding the burglary was presented by the testimony of a police detective. The portions of this testimony that tended to inculpate appellant were entirely hearsay.[4]

2. The Commonwealth's evidence of the technical violations was in the form of testimony by appellant's parole officer.

3. [BY DEFENSE COUNSEL:]
Q. Why did you not telephone your Probation Officer?
A. Because, I have seen him, he came to the house and I was talking to him.
Q. The last time he came to the house was March 6, 1975. Why did you not report to him by phone afterwards?
A. I don't know.
Q. Were you working while you were out on parole?
A. Yes.
Q. Why did you not pay the [court] costs off?
A. I had a lot of bills that I had to pay off, too.
Q. Well you realize that if you failed to pay the costs off they [sic] would constitute a parole violation, do you not?
A. Yes. . . .
(N. T. at 16, January 16, 1976).

4. [BY THE COMMONWEALTH:]
Q. And you had occasion to make an arrest of Mr. Greenlee on December 6th, 1975, in connection with a burglary, is that correct?

A. Yes, I did.

Q. Would you give, his Honor, [sic] a brief summary of the events that occurred on that date?

A. Yes, I was contacted at my home at, approximately, eight forty-five in the morning by Officer Michael McCarthy of the Lansdale Police Department. He was at that time in the process of investigating a a burglary at Penn Auto Center and Sam's Arco Station on South Broad Street at Vine in the Borough of Lansdale. Now, Officer McCarthy had advised me that there had been a window broken in the rear of the southeast side of the building and that the perpertrator [sic] had apparently cut himself rather severely, as there was a considerable amount of blood found at the scene. He also advised that there was, approximately, Two Dollars in pennies taken at that time.

Q. All right.

A. As a result of information supplied me I advised him that I had in mind two suspects, one of whom was Mr. Greenlee; and a check of North Penn Hospital was negative; and I had Officer McCarthy check that with various hospitals in the area. He determined that at Norristown, at Montgomery Hospital, Mr. Greenlee was currently at the Emergency Room for treatment for a cut of the thigh. Now, with that information I contracted Norristown P. D. and they sent three people around to detain Mr. Greenlee until my arrival at, approximately, ten-fifty A.M. at which time I arrested Mr. Greenlee; gave him his advice of rights; he made no statements at that time. I picked up several pieces of evidence, and one was, approximately, a one by three inch piece of glass that was removed from the thigh of Mr. Greenlee by the doctor at the Emergency Room, one side of which was painted red, this corresponded with the window that was broken to gain entrance from the exterior of the building. I also picked up from the hospital and the doctor a piece of gauze with known blood from Mr. Greenlee's leg.

Now, he was returned to the Landsdale P. D. and again advised of his rights in writing. He again refused to make any statements. The blood from the gauze bandage, the piece of glass that was removed from his leg was submitted to the Philadelphia Police Chemistry Laboratory along with other known pieces of glass from the window and—

[DEFENSE COUNSEL]:

Your Honor, I'm going to have to object to this.

THE COURT: Overruled.

DIRECT EXAMINATION CONTINUED

[THE COMMONWEALTH]:

Q. Continue, Detective?

A. There was also glass submitted from the interior door to the office and also a pair of boots which were confiscated from Mr. Greenlee's apartment on a Consent to Search form signed by his wife who was in fact the lessee of the apartment. The result of what was confiscated from the apartment was, approximately Two Dollars in pennies, which she stated she had removed from his trousers.

As a result of the articles submitted to the Philadelphia Police Laboratory it was their conclusion that Item 1 which was a round

■ Revocation of parole because of a subsequent criminal conviction requires service of the remainder of the whole original term of imprisonment, without credit for time at liberty on parole ("street time"). *See United States ex rel. Heacock v. Myers*, 251 F.Supp. 773 (E.D.Pa.1966), aff'd, 3 Cir. 367 F.2d 583, *cert. denied*, 386 U.S. 925, 87 S.Ct. 900, 17 L.Ed.2d 797, *Com. ex rel. Thomas v. Myers*, 419 Pa. 577, 215 A.2d 617 (1966). Revocation based on a technical violation of parole term requires that credit be given for "street time" passed in good standing only. 61 P.S. § 331.21a (1964). *See Bunner v. Board of Probation and Parole*, 32 Pa.Cmwlth. 483, 379 A.2d 1368 (1977).

■ In the instant case, at the parole revocation hearing, the court revoked appellant's parole and allowed no credit for "street time." Such a sentence would be lawful only if a criminal violation were shown at the hearing. Since the only evidence of a criminal offense presented at the parole revocation hearing was hearsay not admissible under any exception, it follows that, had the testimony been objected to and excluded, the revocation court would have been required to consider whether appellant was entitled to credit for street time and, if so, how much credit was to be applied against the sentence of recommittal. *See* 61 P.S. 331.21a;

sealed tin with blood scrapings taken at the scene were scrapings of human-type "O" blood; that the piece of gauze removed from Mr. Greenlee's leg and painted red on one side corresponded to pieces of glass submitted from the broken window at the scene, and they state that paint on Items 6 and 8 compare favorably in color, texture and solvent behavior.

Mr. Greenlee as a result of the evidence that we have obtained at that time was arraigned before District Justice Zepp on the afternoon of December the 6th, and remanded to Montgomery County Prison in lieu of bail, and as a result of the probation detainer or parole detainer filed by Mr. Chancellor.

Q. All right. Detective, did you speak to the victim of this crime?
A. Yes. There was only, approximately, Two Dollars in pennies taken.
Q. Two Dollars in pennies was missing?
A. Yes.
Q. You stated that was found in the pants of Mr. Greenlee?
A. That's correct.
[THE COMMONWEALTH]:
No further questions, your Honor.

*Bunner v. Board of Probation and Parole,* supra. This is so because no evidence on the burglary charge other than the inadmissible hearsay having been presented, the only violations on which the revocation hearing court could have imposed sentence would have been the technical violations admitted by appellant; credit for "street time" in good standing is required.[5] It is clear that appellant's parole was revoked solely on the basis of the evidence heard at the revocation hearing. The opinion of the PCHA hearing court indicates that appellant pleaded guilty to the burglary and related charges after the revocation hearing.

To summarize, we conclude that, had parole revocation counsel objected to the hearsay testimony and had that testimony been excluded, the only proven violations would have been technical, and consideration of appellant's eligibility for credit for street time would have been mandated.[6] Even though we conclude, on the basis of the record, that PCHA counsel had no reasonable grounds for failing to move to amend the PCHA petition in order to raise the issue of ineffectiveness of parole revocation hearing counsel, the record is insufficient to allow proper consideration of the conduct of revocation hearing counsel.[7] We therefore remand this case to the PCHA hearing court for a hearing limited to the issue of the ineffectiveness of the attorney who represented appellant at the parole revocation hearing. If the court finds that revocation counsel's failure to object to the hearsay testimony, was warranted, then the revocation of appellant's parole and the sentence to serve the balance of his original sentence should stand. If the

5. A revocation of parole based entirely on hearsay may not be sustained. *Com. v. Riley,* 253 Pa.Super. 260, 384 A.2d 1333 (1978).

6. The mere arrest on the burglary charge would have been only a technical violation until there had been an adjudication of guilt. *Jones v. Johnson,* 402 F.Supp. 992 (E.D.Pa.1975).

7. For example, parole revocation hearing counsel may have declined to object to the hearsay evidence with the acquiescence of his client. This is particularly significant in view of the fact that appellant, after hearing this evidence, promptly pleaded guilty to the burglary charge.

revocation is based solely on technical violations, the court should determine the amount of "street time" the appellant is entitled to and amend the sentence accordingly.

Remanded for proceedings not inconsistent with this Opinion.