**Jose Enrique TORRES, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 9, 2004.

Decided Sept. 27, 2004.

Reargument Denied Dec. 8, 2004.

Arla M. Waller, Carlisle, for petitioner.

Arthur R. Thomas, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge SMITH–
RIBNER.

Jose Enrique Torres, who is a recommitted technical and convicted parole violator, petitions for review of a decision of the Pennsylvania Board of Probation and Parole (Board) that denied Torres' request for credit toward his recalculated sentence for time spent in the Conewago–Wernersville inpatient drug and alcohol rehabilitation facility, Wernersville State Hospital (Conewago). Torres contends that the Board erred in failing to grant him credit because the conditions at Conewago were sufficiently restrictive so as to constitute "custody." The Board contends that a "bright line" rule should be adopted for these cases, under which only "official detention" as defined in Section 5121(e) of the Crimes Code, 18 Pa.C.S. § 5121(e), is equivalent to incarceration for purposes of receiving credit.[1]

I

On November 5, 2001, the Board released Torres on parole from a five-year sentence for aggravated assault with a maximum-term expiration date of April 22, 2003. The order releasing Torres stated that he was to be paroled "to a community corrections center with drug/alcohol inpatient [treatment]" and that he was to "enter into and actively participate in the community corrections program until successfully discharged by the parole supervision staff." C.R. at 11. Upon his discharge from SCI–Camp Hill, Torres was released to Conewago. On January 2, 2002, Torres left the facility without notice or permission. On February 22, 2002, he was arrested and charged with possession of drug paraphernalia. Torres pleaded *nolo contendere* to the charge and was sentenced to sixty days in the Northampton County prison. By decision and order mailed February 24, 2003, the Board recommitted Torres as a convicted parole violator and recalculated his maximum-term expiration as February 24, 2004. The Board did not give Torres credit for the time that he spent at Conewago.

Torres appealed, and a hearing examiner conducted a hearing on April 11, 2003 to determine the custodial nature of the Conewago inpatient program. Torres and Brandi Koppenhaver, Conewago's executive director, testified about conditions imposed on program residents. The record establishes that Conewago is a privately owned and operated facility, which conducts inpatient drug and alcohol treatment programs under contract with the Board and with the Department of Corrections (Department). Conewago's inpatient programs serve parolees under the supervision of the Board and pre-release inmates under the jurisdiction of the Department.

When a resident arrives at the facility, for the first forty-five days he is permitted to leave only to attend drug and alcohol rehabilitation or other authorized meetings. During these trips, residents are driven to and from their meetings by Conewago employees. After the initial period residents are allowed to leave for unsupervised work or for recreational or other purposes, but they must inform Conewago staff of their whereabouts and the time of return. Conewago has no fence, no internally locked doors, no window bars and no restraint devices, such as handcuffs, and persons may leave the facility by pushing

---

1. Section 5121(e) of the Crimes Code provides as follows: " '[O]fficial detention' means arrest, detention in any facility for custody of persons under charge or conviction of crime ... or any other detention for law enforcement purposes; but ... does not include supervision of probation or parole...." (This case was reassigned to the opinion writer on July 12, 2004.)

panic or pad bars. If an inmate under the Department's jurisdiction leaves without permission, Conewago notifies the Department and the State Police, and the inmate will be arrested and charged with escape. If a parolee leaves without permission the parole agent is notified, and the parolee will be treated as a technical parole violator. The hearing examiner found that Conewago's program was not equivalent to incarceration and recommended that Torres be denied credit for time he spent there. The Board adopted the recommendation and denied Torres' administrative appeal.[2]

## II

Section 21.1(a) of the Act commonly known as the Parole Act[3] authorizes the Board to recommit as a convicted parole violator any parolee who is convicted, found guilty or pleads *nolo contendere* to any crime punishable by imprisonment and provides that a person so recommitted "shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole." Various court decisions have discussed the meaning of "at liberty on parole," and courts have attempted to articulate standards for determining when a parolee should be given credit toward a recalculated sentence in a given case for time that the parolee spent in an inpatient drug and alcohol rehabilitation facility.

In *Cox v. Board of Probation and Parole*, 507 Pa. 614, 493 A.2d 680 (1985), the Pennsylvania Supreme Court for the first time addressed the meaning of the phrase "at liberty on parole." The court reversed an order of this Court, which had affirmed the Board's denial of credit for time that a parolee spent on parole in an inpatient drug treatment program at Eagleville Hospital. In remanding for additional hearings, the Supreme Court held:

Appellant did not enjoy the greater freedom of "street time" while at Eagleville, but he was restricted from leaving Eagleville under the special condition arising out of his original sentence, a restriction of liberty presumably less onerous than constructive parole. We are therefore left with the need for a factual determination as to the nature of the Eagleville program and whether the restrictions on appellant's liberty there were the equivalent of incarceration entitling him to credit for the time spent in the program. The majority of jurisdictions which allow credit on backtime for time spent in rehabilitation programs examine the specifics of the program to make this determination.

... All forms of parole involve some restraint on the parolee's liberty, and non-compliance with them can result in arrest and recommittal as a technical parole violator. It is appellant's burden, on remand, to show the specific characteristics of the Eagleville program that constituted restrictions on his liberty sufficient to warrant credit on his recomputed backtime, and persuade the Board of that fact. Moreover, we will not interfere with the Board's determi-

---

**2.** The Court's review is limited to determining whether the Board violated constitutional rights, whether it committed an error of law, whether a Board practice or procedure was not followed and whether the findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *McKenna v.*

*Pennsylvania Board of Probation and Parole,* 782 A.2d 1105 (Pa.Cmwlth.2001).

**3.** Section 21.1(a) of the Act of August 6, 1941, P.L. 861, *as amended,* added by Section 5 of the Act of August 24, 1951, P.L. 1401, 61 P.S. § 331.21a(a).

nation of that issue unless it acts arbitrarily or plainly abuses its discretion.

Nevertheless, the Board must help in providing a record which makes effective appellate review possible. Simply because parole status must be voluntarily accepted by the prisoner, and the conditions of his parole are known to him when it is accepted, we cannot conclude, as the Board seems to intimate, that he is automatically "at liberty on parole."

The Board imposed special conditions on appellant's parole, conditions beyond those generally imposed on parolees. While the Board had the statutory authority to impose these conditions, the specific programs at Eagleville may have been so restrictive that they require the granting of credit. Other programs may not require such credit. We cannot make an informed determination of this issue on the record before us. *Cox*, 507 Pa. at 619–620, 493 A.2d at 683–684 (citations and footnote omitted).

Since *Cox* this Court has considered the issue of claims for credit for time that assertedly was not "at liberty on parole" on several occasions. In *Beasley v. Pennsylvania Board of Probation and Parole*, 103 Pa.Cmwlth. 39, 519 A.2d 1069 (1987), a parolee sought credit on recommitment for time on parole when he completed an inpatient drug treatment program. This Court stated that in *Cox* the Supreme Court held that each claim must be evaluated on a case-by-case basis and remanded for a determination of facts regarding the nature of the rehabilitation program. In *Jackson v. Pennsylvania Board of Probation and Parole*, 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990), a parolee was paroled to the same Eagleville inpatient drug and alcohol treat-

ment program involved in *Cox*. Based on evidence from a hearing, the Board found that the doors were not locked, that the facility had no fences and did nothing to prevent a patient from leaving and that if the parolee left the facility parole authorities were notified. The Court held that the Board did not abuse its discretion in determining that the program lacked sufficient custodial aspects to characterize time spent there as confinement rather than liberty.

The Supreme Court approved credit toward a sentence for time spent in a treatment facility in a slightly different context in *Commonwealth v. Conahan*, 527 Pa. 199, 589 A.2d 1107 (1991). There a defendant charged with driving under the influence of alcohol voluntarily entered and completed an inpatient alcoholism treatment program. After he pleaded guilty, the trial court granted credit for his time in "custodial treatment" pursuant to Section 9760 of the Sentencing Code, *as amended*, 42 Pa.C.S. § 9760, which provides that a defendant may be given credit for the period of time spent "in custody." The court reasoned that the defendant's time in the restrictive treatment facility was sufficient to satisfy the requirement of former Section 3731(e) of the Vehicle Code, 75 Pa.C.S. § 3731(e), that a person convicted under that section serve a mandatory period of "imprisonment." In the absence of a statutory definition, the Supreme Court noted the definition in Black's Law Dictionary (5th ed. 1979) of "imprisonment," which is broader than simply confinement behind bars, and the court stated its belief that "in custody" in that case meant time spent in institutionalized rehabilitation and treatment programs.[4]

---

4. Specifically, Black's Law Dictionary defined "imprisonment" in part as "[t]he act of putting or confining a man in prison. The re-

straint of a man's personal liberty.... It is not a necessary part of the definition that the confinement should be in a place usually ap-

More recently, in *Meehan v. Pennsylvania Board of Probation and Parole,* 808 A.2d 313 (Pa.Cmwlth.2002), the parolee sought credit on recommitment for 192 days that he spent completing a residential drug treatment program at Keenan House. Following remand for an evidentiary hearing, the Court affirmed the Board's denial of credit noting that the evidence showed that although the residents were closely monitored, the parolee could have walked out the door, that no one on staff was allowed to restrain anyone who left and that if a parolee left it would not be an escape but rather absconding on parole. In ruling on a claim of violation of equal protection because an inmate on pre-release status was entitled to such credit, the Court explained that if a pre-release inmate left he could be charged with escape under Section 5121 of the Crimes Code, 18 Pa.C.S. § 5121, for removing himself from official detention, which, as defined in Section 5121(e), excluded supervision on probation or parole. Thus their circumstances differed.

The Court considered Section 21.1(a) of the Parole Act as well as Section 9760 of the Sentencing Code in *McMillian v. Pennsylvania Board of Probation and Parole,* 824 A.2d 350 (Pa.Cmwlth.2003), *appeal granted,* 578 Pa. 718, 854 A.2d 969 (2004). The opinion in that case states that the parolee was released to the Capitol Pavilion Community Corrections Center and that he later sought credit toward a period of recommitment for his time there. The Board argued that a parolee is always "at liberty on parole" except when the parolee is under arrest and waiting to be returned. The Court referred to *Commonwealth v. Chiappini,* 566 Pa. 507, 782 A.2d 490 (2001) (plurality opinion), which noted that "custody" had been held to be

broader than "imprisonment" and that whether legal restraint constitutes "custody" for purposes of sentencing credit is determined by the extent of control exercised by the restraining authority. It referred also to the credit approved in *Conahan* toward a mandatory "imprisonment" for time spent in inpatient drug rehabilitation.

The Court in *McMillian* noted that there was a seventy-two-hour period in which residents could not leave at all and that then they were subject to all rules and regulations, including mandatory participation in all programs. Inmates on pre-release status and not yet on parole would be reported to the Department for leaving without permission, and those on parole would be reported to the Board. Pointing out the factual similarity to the institutionalized setting involved in *Conahan,* the Court concluded that the record showed that the extent of control over pre-release inmates or parolees exercised by the authorities at the community corrections center involved sufficient restraints to constitute custody for purposes of credit under Section 9760 of the Sentencing Code.

In *Willis v. Pennsylvania Board of Probation and Parole,* 842 A.2d 490 (Pa.Cmwlth.2004), the Court affirmed the Board's decision that time spent in the inpatient drug/alcohol treatment program at the Gateway Rehabilitation Center was not subject to later credit under Section 21.1(a) of the Parole Act. While noting that credit is required if restrictions may be equated with custody or imprisonment, the Court agreed that the parolee had not met his burden under *Cox* where the evidence showed that residents were not locked in, that they could have walked out, that if they did so no one would try to stop them and that residents who left without per-

propriated to that purpose; it may be in a locality used only for the specific occa-

sion...." *Conahan,* 527 Pa. at 202, 589 A.2d at 1109.

mission would not be charged with escape. Similarly, in *Wagner v. Pennsylvania Board of Probation and Parole*, 846 A.2d 187 (Pa.Cmwlth.2004), the parolee sought credit for time spent in an inpatient drug/alcohol rehabilitation program while on parole at a community corrections center. In view of evidence, *inter alia*, that no force would be used to restrain anyone who left without permission and that staff members were counselors and not law officers, the Court held that the case was governed by *Jackson* and *Willis* and not by *McMillian.*[5]

### III

Torres cites *McMillian* for the proposition that a pre-release inmate or a parolee confined to a community corrections center is sufficiently restrained, physically and constructively, to be in custody. Also, he contends that this case is similar to *Conahan.* At the hearing on April 11, 2003, Torres testified that during the first forty-five days of his residence he was not allowed to go anywhere outside the facility, so it was like a correctional facility. N.T. at 6–7. The exceptions were meetings outside the facility roughly once a week, but for these he was accompanied by a staff escort. *Id.* at 7–8. Koppenhaver confirmed that for attending meetings away from the facility in that initial blackout period a staff person would drive the resident to the meeting, remain with him and then drive him back. *Id.* at 27. Even after the initial blackout period, Torres asserts, he had to earn leisure time before he could leave the facility, he had to sign out and report where he was going and when he would return, and if he failed to return at the designated time he would be arrested by local authorities and/or the Board.

The Board argues, to the contrary, that the conditions at the group home included neither physical restraint nor the threat of criminal sanction if Torres absconded, which it asserts are the essential characteristics of incarceration. Further, the Board submits, Torres was neither incarcerated nor in official detention, and he could not be charged with escape when he left Conewago. The Board additionally argues that monitoring compliance with parole conditions is not the same as incarceration or detention. Notwithstanding its suggestion for a "bright line" rule for the Court to adopt in these cases, the Board appears to understand clearly that its position is flatly contrary to the Supreme Court's holding in *Cox.*

■ The Board, nonetheless, maintains that in *Cox* the Supreme Court "overlooked" a provision of Section 21.1(a) of the Parole Act indicating that time at liberty on parole for a technical parole violator ends when he is taken into custody on a Board warrant and also overlooked a large body of common law on the subject of imprisonment. It cites to provisions of the Restatement (Second) of Torts relating to the tort of false imprisonment and what constitutes confinement, although such common law tort principles are irrelevant to the interpretation of Section 21.1(a) involved in *Cox* and its progeny. The referenced statutory provision does not preclude finding custody in other contexts. Moreover, a failure of the legislature to change the law after the Supreme Court has interpreted a statute creates a presumption that the court's construction was

---

**5.** The Board has the authority to impose special conditions of parole. *See* Section 23 of the Parole Act, 61 P.S. § 331.23; 37 Pa.Code § 63.5; *Cox.* As the preceding discussion illustrates, the Board frequently imposes a special condition as it did with Torres of completion of a drug and/or alcohol rehabilitation program at an approved inpatient treatment facility.

in accord with legislative intent. *Commonwealth v. Wanamaker*, 450 Pa. 77, 296 A.2d 618 (1972). The legislature amended Section 21.1 of the Parole Act in Section 4 of the Act of December 21, 1998, P.L. 1077, but it made no change to Section 21.1(a).

In regard to *McMillian* the Board first suggests that it is distinguishable because this Court misperceived that the facility involved was a community corrections center, the assistant director in *McMillian* used the term "inmates" whereas the term used here was "residents" and the assistant director testified (incorrectly) that inmates were on pre-release status whereas here Torres clearly was a parolee. If *McMillian* cannot be distinguished, the Board requests the Court to overrule it, arguing that the Court announced a per se rule of credit for time spent in community corrections centers that conflicts with well established, binding precedent in *Cox*. The Board emphasizes that under 37 Pa.Code § 94.2(c)(1) a community corrections center is operated by the Department and that because the facility involved in *McMillian* was privately owned, it falls under the designation of "Group home residency" in 37 Pa.Code § 94.2(c)(2), which "complements community corrections center residency[.]" Such residences provide specialized residential treatment and *include 24–hour supervision,* living quarters and special services for selected residents. *Id.* Thus, by the Board's own citation, the Capitol Pavilion was complementary to community corrections, served similar functions and remained under community corrections jurisdiction.

### IV

Under *Cox* it is not necessary that restrictions on Torres' liberty be identical to those that would exist at SCI–Camp Hill to conclude that he was not at liberty on parole. Had that been the rule intended in *Cox* the court could have simply affirmed the Board's denial of credit, for it is unlikely that any inpatient drug and alcohol treatment program would be as restrictive in all respects as conditions found in a state prison. Koppenhaver confirmed Torres' testimony that for the first forty-five days of treatment Torres was allowed to leave the premises only to attend meetings approved or ordered by Conewago; these trips occurred weekly and were under the supervision of Conewago staff. After that initial period the conditions more resembled those analyzed in other cases. *See Meehan.*

■ Based on a thorough review of case law, the Court concludes that credit must be afforded for the initial forty-five day period of time that Torres spent at Conewago. Torres testified as follows regarding this initial period of time: "It's like a state correctional facility because I'm over there with the state inmates another fellow and we don't go anywhere except inside the building—meetings. We don't go anywhere else. Meetings outside the community [are] under staff supervision. It's 24/7 inside the facility." N.T. at 6. The Board dismisses this testimony as "self-serving," but it was not rebutted and in fact was confirmed by Koppenhaver. The mandatory escort during this initial period plainly was intended as a coercive security measure and not merely as transportation assistance.

As the Supreme Court held in *Cox*, specific circumstances may constitute such restrictions on liberty as to require credit toward a sentence on recommitment. Although no formulation will apply to all potential individual circumstances, the facts in *Jackson*; *Meehan* and *Wagner* demonstrate that ordinary restrictions such as those that attend many inpatient treatment programs are not so onerous as to require a credit. The Court holds oth-

erwise, however, when the restrictions upon a parolee become such that they destroy any sense of being "at liberty on parole" and, consequently, meet the *Cox* standard. Recognizing that courts must continue to examine the factual circumstances of each case, the Court nevertheless holds that a parolee who has been forbidden generally to leave a particular inpatient drug and alcohol rehabilitation facility for a specified period for which credit is sought, who is under 24–hour supervision during the specified period and who is not permitted to make required trips outside of the facility without an escort cannot reasonably be described as being "at liberty on parole." [6]

By failing to recognize the extent of the restrictions imposed upon Torres for the initial forty-five day period of his time at Conewago as being within the *Cox* standard, the Board abused its discretion in denying credit for that period. Accordingly, the Court reverses the Board's order to the extent that it denied credit to Torres for the forty-five-day period of time. The Court otherwise affirms.

### ORDER

AND NOW, this 27th day of September, 2004, the order of the Pennsylvania Board of Probation and Parole is reversed to the extent that it denied Jose Enrique Torres credit toward his period of recommitment for the forty-five days relating to the initial period of the time he spent at the Conewago–Wernersville inpatient drug rehabilitation facility. The Board's order is otherwise affirmed.

LEADBETTER, J., dissents.

---

**6.** As the dissent noted in *Cox,* courts of this Commonwealth have held that time spent "at liberty on parole" is synonymous with "street time" when construing 61 P.S. § 331.21a.

### CONCURRING OPINION BY Judge FRIEDMAN.

I respectfully concur. I agree with the majority that the restrictions on the liberty of Jose Enrique Torres (Torres) during the initial forty-five-day "black out" period at the Conewago–Wernersville inpatient drug and alcohol rehabilitation facility (Conewago) were the equivalent of incarceration as contemplated by our supreme court in *Cox v. Board of Probation and Parole,* 507 Pa. 614, 493 A.2d 680 (1985). Thus, like the majority, I would hold that Torres is entitled to forty-five days credit towards his sentence. However, I write separately to present a different analysis of the issue.

Torres was paroled to Conewago, a community corrections center (CCC) with a drug and alcohol treatment program, and was required to actively participate in the program until successfully discharged. (C.R. at 11.) The residents at Conewago included other parolees under the jurisdiction of the Pennsylvania Board of Probation and Parole (Board) as well as prerelease inmates under the jurisdiction of the Department of Corrections (DOC). (C.R. at 49–50.) If a parolee leaves without authorization, the staff notifies a parole agent, and, when arrested, the parolee is charged with violating a condition of parole. (C.R. at 51.) By contrast, if a prerelease inmate leaves without authorization, the staff notifies DOC and the Pennsylvania State Police, and, when arrested, the inmate is charged with escape. (C.R. at 50.) During an initial "black out" period of forty-five days, residents in the inpatient program remain at the facility and attend meetings there. (C.R. at 57.) Residents

*See, e.g., Lewis v. Pennsylvania Board of Probation and Parole,* 74 Pa.Cmwlth. 335, 459 A.2d 1339 (1983); *Commonwealth v. Greenlee,* 263 Pa.Super. 477, 398 A.2d 676 (1979).

sometimes attend meetings away from the facility, in which case the facility's staff escorts and drives the residents to and from the meetings. (C.R. at 57.)

The question presented is whether the restrictions on Torres' liberty during the initial "black out" period at Conewago were the equivalent of incarceration and, thus, sufficient to warrant giving Torres credit towards his sentence following his recommitment as a convicted parole violator (CPV).

Section 21.1(a) of the Act commonly known as the Parole Act[1] states that a CPV who has been recommitted by the Board shall receive no credit for time "at liberty" on parole. In order for a parolee to prove that time spent in an inpatient rehabilitation program is **not** time at liberty on parole, the parolee must demonstrate that specific characteristics of the program constitute "restrictions on ... liberty" sufficient to warrant credit. *Cox,* 507 Pa. at 620, 493 A.2d at 683. Restrictions on liberty warrant credit if they are the "equivalent of incarceration." *Id.* at 619, 493 A.2d at 683.

## I. Equivalent of Incarceration

In *Cox,* our supreme court held that a parolee is entitled to credit for time served in an inpatient rehabilitation program when the restrictions on liberty were the equivalent of "incarceration." However, the court did not indicate in that decision whether they meant incarceration in a maximum security or a minimum security facility. Likewise, the court did not address whether the lesser restrictions on

the liberty of an inmate who resides in a CCC or group home, or who has qualified for work release, educational release, vocational training release or temporary home furlough, would qualify as the equivalent of incarceration. *See* 37 Pa.Code § 94.2.

## A. CCC Residency

Although our supreme court did not provide clear guidance in *Cox* as to the meaning of "incarceration" for purposes of awarding credit to parolees for time spent in a CCC, the fact is that inmates serving sentences of incarceration *always* receive credit for time spent in CCC residency programs like the one at Conewago.

By definition, a CCC is a "minimum security ... facility operated by the [DOC] for the purpose of facilitating special programs." 37 Pa.Code § 91.1. A CCC residency program is a prerelease program with a "custodial structure." 37 Pa.Code § 94.2(c)(1). A qualified inmate serving a sentence of incarceration may be placed in a CCC residency program to serve some of that sentence. *See* 37 Pa.Code §§ 94.2(c)(1) & 94.3(a)(2)(i) (setting time-served requirements for placement in a CCC residency program).

Certainly, then, to an inmate who is *not* on parole, a CCC residency is the equivalent of incarceration.[2] On this basis, I suggest that to meet their burden of proof under *Cox,* parolees may present evidence to establish that the restrictions on liberty are identical for parolees and inmates at a CCC. Given such evidence, I would conclude that the parolee is entitled to credit towards his sentence for time spent at the CCC.[3]

---

1. Act of August 6, 1941, P.L. 861, *added by* the Act of August 24, 1951, P.L. 1401, *as amended,* 61 P.S. § 331.21a(a).

2. Like all state correctional institutions, a CCC is operated by the DOC, has a custodial structure and holds inmates who are serving sentences of incarceration before being re-

leased on parole or otherwise. Like some state correctional institutions, a CCC is a minimum security facility.

3. I would *not* hold that a parolee is entitled to credit for time spent in *any* inpatient rehabilitation program. Some parolees are released

## B. Escape

Torres indicated by his testimony that the restrictions on his liberty were the same as the restrictions on the liberty of the prerelease inmates. (*See* C.R. at 36.) However, according to the testimony of the executive director of Conewago, there was a difference between the two groups, viz., a parolee who left without authorization would be charged with a parole violation by a parole agent, but a prerelease inmate who left without authorization would be charged with escape by the Pennsylvania State Police.

This court held in *Meehan v. Pennsylvania Board of Probation and Parole*, 808 A.2d 313 (Pa.Cmwlth.2002), that parolees and inmates in an inpatient treatment program are not similarly situated for equal protection purposes because, unlike inmates, parolees are not charged with escape for leaving the program without authorization. In subsequent cases, this court has considered "the escape factor" in concluding that the restrictions on a parolee's liberty at inpatient rehabilitation facilities are not the equivalent of incarceration. *See, e.g., Wagner v. Pennsylvania Board of Probation and Parole*, 846 A.2d 187 (Pa.Cmwlth.2004); *Willis v. Pennsylvania Board of Probation and Parole*, 842 A.2d 490 (Pa.Cmwlth.2004).

It may *seem* logical to think that, for a person to be "incarcerated" in a particular facility, that person would be charged with escape for leaving the facility without authorization. However, the result of such thinking is that parolees can *never* receive credit for time spent in a CCC because parolees can *never* be charged with escape.[4] In *Cox,* our supreme court clearly anticipated that parolees in a CCC program *might* be entitled to credit. To reiterate, the question under *Cox* is whether the **specific characteristics of the program** restrict liberty to such an extent that residency in the program is the equivalent of incarceration. The charge made against an individual who leaves a CCC program without authorization is a legal matter; the applicable charge is *not* a characteristic of the program.

## C. McMillian

In *McMillian v. Pennsylvania Board of Probation and Parole*, 824 A.2d 350 (Pa. Cmwlth.2003), *appeal granted,* 578 Pa. 718, 854 A.2d 969 (2004), this court appeared to eliminate any distinction between the giving of credit to inmates and parolees for time spent at a CCC. This court considered, for the first time, whether a parolee is entitled to credit for time spent at a CCC based on section 9760 of the Sentencing Code, which allows credit for time

---

to *hospital* rehabilitation programs rather than CCC rehabilitation programs. Moreover, where a parolee is released to a CCC program, the parolee must present evidence that the CCC does house inmates, or may house inmates, and that the restrictions on the liberty of the parolee were identical to the restrictions that were placed, or would be placed, on the liberty of inmates.

4. Section 5121(a) of the Crimes Code defines "escape" as unlawfully removing oneself from "official detention." 18 Pa.C.S. § 5121(a). Section 5121(e) of the Crimes Code defines "official detention" to mean any detention for law enforcement purposes, but it does not

include supervision of probation or parole. 18 Pa.C.S. § 5121(e).

I note that electronic home monitoring is "official detention," and, thus, a person can be charged with escape for removing oneself from electronic home monitoring. *Commonwealth v. Wegley*, 574 Pa. 190, 829 A.2d 1148 (2003). However, electronic home monitoring is *not* "imprisonment," a synonym for the word incarceration. *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991); Black's Law Dictionary 775 (8th ed. 2004). Thus, based on current case law, some individuals who are *not* incarcerated may be charged with escape.

spent "in custody." 42 Pa.C.S. § 9760. This court held that "a pre-release *inmate or parolee* confined to a[CCC] is sufficiently restrained, physically and constructively, as to be *in custody*." *McMillian*, 824 A.2d at 353 (emphasis added). Thus, we concluded that the parolee was entitled to credit.

This court has since limited its holding in *McMillian* to mean only that *prerelease inmates*, but not parolees, are entitled to credit for time spent at a CCC under section 9760. *See, e.g., Wagner*. However, the Board points out in its brief that the individual in *McMillian* was a parolee, not a prerelease inmate. The Board also asserts that, if the individual had been a prerelease inmate, the DOC, rather than the Board, would have had jurisdiction over his entitlement to credit. Accepting the Board's argument, this court's case law limiting the holding in *McMillian* should be overruled.[5]

## II. Frye

Although this court has jurisdiction over cases involving parolees under the jurisdiction of the Board, our superior court has jurisdiction over cases involving county "parolees."[6] In *Commonwealth v. Frye*, 853 A.2d 1062 (Pa.Super.2004), our superior court adopted the approach taken by this court in *McMillian*, considering at the same time whether the county "parolees" are "in custody" under section 9760 of the Sentencing Code and whether the county "parolees" are "incarcerated" under *Cox*.

Specifically, our superior court considered whether a "parolee" under the jurisdiction of the courts of common pleas is entitled to credit towards a sentence for time spent on electronic home monitoring as a condition of parole. The court concluded that time spent in house arrest is time "in custody" under section 9760 and that electronic home monitoring is the equivalent of incarceration under *Cox*.

> We conclude that the time Frye spent on house arrest was clearly "time spent in custody" for purposes of the statute. Frye could not even have gone into the yard of her residence without setting off an alarm. She needed permission to leave the house or attend Alcoholics Anonymous meetings, counseling, work or other programs. Probation officers were free to enter her house and search her at any time. As such, we believe that Frye, in effect, was *incarcerated* albeit at her home address.

*Frye*, 853 A.2d at 1065 (emphasis added). Although we are not bound by our superior court's precedent,[7] I would point out

---

**5.** For me, there is no reason to limit *McMillian* simply because *McMillian* considered both whether a parolee is "in custody" under section 9760 of the Sentencing Code and whether a parolee is "at liberty" under section 21.1(a) of the Parole Act. If a parolee is "in custody," then the parolee is not "at liberty" on parole.

**6.** A sentence that is less than twenty-four months is a county sentence, and individuals released on parole from county sentences are supervised by the county probation department rather than the state Board. *See Commonwealth v. Frye*, 853 A.2d 1062 (Pa.Super.2004). Although the *probation* department was responsible for supervising the

individual in *Frye*, I refer to the individual as a "parolee," as did our superior court, because she was released on parole from a sentence; she was not actually given a sentence of probation.

**7.** This court is not bound by our superior court's precedent, but, where persuasive, we are free to adopt our superior court's reasoning. *Wertz v. Chapman Township*, 709 A.2d 428 (Pa.Cmwlth.1998), *aff'd*, 559 Pa. 630, 741 A.2d 1272 (1999). In this regard, I note that *Frye* is consistent with *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001), in which our supreme court awarded credit to an inmate under section 9760 of the Sentenc-

that the restrictions on Torres' liberty at Conewago were greater than the restrictions on a county "parolee" subject to electronic home monitoring.

For all of the reasons stated above, I would hold that Torres is entitled to forty-five days credit for the initial "black out" period at Conewago.

ing Code, 42 Pa.C.S. § 9760, for time spent in an electronic home monitoring program.