# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Johnson, : 
              Petitioner : 
               : 
           v. :   No. 2009 C.D. 2015
              :   Submitted: March 18, 2016
Pennsylvania Board of Probation : 
and Parole, : 
            Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED: July 18, 2016**

Kevin Johnson (Johnson) petitions for review of the September 29, 2015 Decision of the Pennsylvania Board of Probation and Parole (Board), which affirmed the Board's decision mailed July 16, 2015 (July Decision) that denied Johnson credit on his original sentence for the time he spent at ADAPPT Treatment Services (ADAPPT), a halfway house. The July Decision also reiterated that Johnson's new parole violation maximum date of July 7, 2017, is correct. On appeal, Johnson argues that the Board erred in denying him credit on his original sentence with the time he spent at ADAPPT on parole, pursuant to Cox v. Pennsylvania Board of Probation and Parole, 493 A.2d 680 (Pa. 1985), because the conditions were the functional equivalent of incarceration. The Board

concluded that Johnson did not meet his burden of proof entitling him to credit under Cox.  Because we conclude that the Board did not act arbitrarily or plainly abuse its discretion in deciding that Johnson was not entitled to credit for the period of time he resided at ADAPPT, we affirm.

## I.    Background

Johnson was sentenced to an aggregate term of four to eight years in a state correctional institution (SCI) after pleading guilty to three counts of Drug Manufacture, Sale, Delivery, or Possession with Intent to Deliver a Controlled Substance; one count of Resisting Arrest; and one count of Violation of Probation – Resisting Arrest.  (Sentence Status Summary, C.R. at 1, 3.)  His original maximum date was set as November 29, 2015.  (Id.)  On October 9, 2012, Johnson was released on parole to ADAPPT, subject to certain special conditions, and resided there until November 28, 2012.  (Evidentiary Hearing Report, C.R. at 105-06; see also Conditions Governing Parole, C.R. at 30-31, 33-34.)  Following his release from ADAPPT, Johnson remained at liberty on parole until August 30, 2013.

On August 30, 2013, Johnson was arrested by the Reading City Police Department on new criminal charges[1] and confined in Berks County Prison.  Johnson was unable to post bail on the charges.  (C.R. at 78.)  The Board issued a warrant to commit and detain Johnson the same day.  (C.R. at 35.)  The Board detained Johnson pending disposition of the criminal charges via decision recorded

---

[1] The new charges were:  Delivery of a Controlled Substance – Marijuana; Possession with Intent to Deliver a Controlled Substance; and Possession of a Controlled Substance – Marijuana.  The latter two charges were dismissed subsequently.  (C.R. at 48.)

on October 16, 2013. On January 9, 2014, Johnson pleaded guilty to one count of Manufacture, Delivery, or Possession with Intent to Deliver – Marijuana, and the Berks County Court of Common Pleas sentenced him to two to five years' confinement in a SCI. (C.R. at 39-40, 43.) Johnson was placed in SCI-Graterford on January 21, 2014. (Moves Report, C.R. at 88.)

The Board thereafter conducted a parole revocation hearing on April 25, 2014. (Hearing Report, C.R. at 57.) By Board decision mailed June 9, 2014, Johnson was recommitted as a convicted parole violator (CPV) to serve 12 months backtime and was not given credit for time he spent at liberty on parole. (Order to Recommit, C.R. at 89; Board Decision, C.R. at 91.) At that time, Johnson owed 1,146 days on his original sentence. (Order to Recommit, C.R. at 89.) Adding 1,146 days to Johnson's return to custody date of May 18, 2014,[2] resulted in a new maximum date of July 7, 2017. (Id.)

On July 7, 2014, Johnson filed a Petition for Administrative Review of the Board's June 9, 2014 decision recommitting him as a CPV to serve 12 months backtime and recalculating his parole violation maximum date as July 17, 2017. (C.R. at 93-94.) In the petition, Johnson argued that the Board erred in recalculating his new maximum date because it failed to award proper credit for the period of time Johnson resided at ADAPPT. (C.R. at 94-95.)[3] By letter mailed

---

[2] By decision recorded March 30, 2015, Johnson was paroled to a state detainer sentence and was ordered to "complete any remaining required correctional program(s) from [his] current sentence." (C.R. at 125-28, 130.)

[3] Specifically, Johnson argued that the Board erroneously added 11 extra months to his original sentence. (C.R. at 94.) Johnson contended that credit only should have been denied for the approximately nine months from December 2012 to August 30, 2013 he was at liberty on parole following his release from ADAPPT. (C.R. at 95.) Thus, Johnson requested credit for the approximately 50 days he spent at ADAPPT.

December 12, 2014, the Board indicated that an evidentiary hearing would be scheduled to determine whether Johnson was entitled to any credit for his time spent at ADAPPT. (Board Letter to Johnson (December 12, 2014), C.R. at 101.) The hearing was held on February 24, 2015. (C.R. at 102.)

At the hearing, Johnson testified that he was sent to ADAPPT from October 9, 2012 to November 28, 2012. Johnson testified that there was no fence around the facility, the doors locked from both the inside and outside, and the windows were nailed shut. (Hr'g Tr. at 8.)[4] Johnson stated that residents had to submit to urine tests and pat-down searches and stand for count. (Hr'g Tr. at 8-9.) He testified that he was housed with some pre-release inmates from the Department of Corrections, but that most of the residents were on state parole. (Hr'g Tr. at 8.) He stated that the pre-release inmates were subject to mostly the same stipulations as parolees, though pre-release inmates could get furloughs for an entire weekend. (Hr'g Tr. at 9-10.) Johnson testified that he was allowed to go out and look for work, like pre-release inmates, and that he had to attend certain programs in order to receive passes to obtain the privilege. (Hr'g Tr. at 9-10.) Johnson further testified that his family could visit him in ADAPPT's visiting room, and that he could go and visit them for a certain number of hours. (Hr'g Tr. at 10.)

William George (George), an ADAPPT Supervisor, testified that there is no fence around the ADAPPT facility, the doors lock from the outside only, and there is nothing stopping the residents from leaving the facility. (Hr'g Tr. at 12-13.) George testified that ADAPPT staff can only ask residents not to leave, but that residents could walk out on their own. (Hr'g Tr. at 13.) On cross-examination by Johnson's counsel, George testified that the pre-release inmates housed at

---

[4] The hearing transcript can be found on pages 108-124 of the certified record.

ADAPPT were "under the same rules and regulations, except for the A[lcohol] and D[rug] part." (Hr'g Tr. at 14.) George stated "[t]hat's where they get locked in 24/7 and they're not allowed out. If you're in the group home, you're allowed out for a certain amount of time during the day to go to your job and things like that." (Hr'g Tr. at 14.) George testified that both parolees and pre-release inmates were subject to random searches. (Hr'g Tr. at 14-15.)

Based on this testimony, the Board in its July Decision found that ADAPPT did not restrict Johnson's ability to leave the program because the doors were locked only from the outside to prevent people from entering the building, and ADAPPT staff would not restrain or detain any residents from leaving without authorization. (July Decision, Finding of Fact (FOF) ¶ 3.) Additionally, the Board found that there was no fence around the facility to prevent Johnson from leaving at any time. (Id.) Lastly, the Board found that "given the proper privileges through treatment attendance, all [residents] could walk in the community within certain timeframes." (Id.) The Board concluded that the restrictions on Johnson's liberty while he resided at ADAPPT were not the equivalent of incarceration and, therefore, Johnson did not meet his burden of proof entitling him to credit under Cox, 493 A.2d at 683. (July Decision, Conclusions of Law (COL) ¶¶ 2-4.) Accordingly, the Board denied Johnson credit for the time he spent at ADAPPT.

Johnson filed an Administrative Remedies Form on July 30, 2015, challenging the Board's denial of credit on his original sentence for the time he spent at ADAPPT. (Administrative Remedies Form, C.R. at 135-36.) In his appeal, Johnson argued that he met his burden under Cox and proved that his time at ADAPPT was the equivalent of incarceration because: (1) "he was confined there with . . . [p]re-[r]elease [i]nmates serving their sentences under [] identical

5

constraints and conditions"; and (2) "he was subjected to suspicion-less searches of his person and property, which can only be done to prison inmates." (Id. at 2, C.R. at 136.) By decision mailed September 29, 2015, the Board denied the appeal and affirmed its July 16, 2015 decision. (Board Decision, C.R. at 137-38.) This appeal followed.[5]

## II. Discussion

On appeal, Johnson argues that the Board failed to credit his parole violation maximum date with all the time to which he was entitled when it determined that he was at liberty on parole while he resided at ADAPPT. Johnson argues that he met his burden of proving that his liberty was sufficiently restrained at ADAPPT such that it was the functional equivalent of incarceration. Johnson contends that the restrictions on his liberty were at least the same as, or greater than, the restrictions on the pre-release inmates who also resided at ADAPPT because he was subject to the same rules and regulations as those inmates, and he was subject to random suspicion-less searches of his person and property. Johnson requests, just as the parolee did in Medina v. Pennsylvania Board of Probation and Parole, 120 A.3d 1116 (Pa. Cmwlth.), petition for allowance of appeal denied, 123 A.3d 1293 (Pa. 2015), that this Court revisit our decision in Torres v. Pennsylvania Board of Probation and Parole, 861 A.2d 394, 401 (Pa. Cmwlth. 2004) (Friedman, J., concurring), "and hold, consistent with the Torres concurrence, that the parolee's burden is satisfied when he establishes that he suffered at least the same

---

[5] Our "review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence." Miskovitch v. Pa. Bd. of Prob. and Parole, 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013).

6

restrictions as pre-release inmates serving a state sentence at the same treatment facility." (Johnson's Br. at 13.) Johnson thus argues that his time at ADAPPT was the functional equivalent of incarceration and not subject to forfeiture after his subsequent recommitment as a CPV.

The Board responds that it did not act arbitrarily or plainly abuse its discretion by deciding that Johnson was not entitled to credit for the period he resided at ADAPPT Treatment Services. Based on the testimony offered at the evidentiary hearing, the Board found that: anyone could leave ADAPPT at any time; there was no fence around the facility to prevent residents from leaving; residents could come and go within certain timeframes; and, staff members did not prevent residents from leaving. Thus, the Board argues, those factors support a determination that Johnson's time at ADAPPT was not the equivalent of incarceration, and there is no new basis to overrule this Court's decision in Medina.

## III.    Analysis

Section 6138(a)(2) of the Parole Code provides that a parolee who is recommitted as a CPV, as Johnson was here, "shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and . . . shall be given no credit for the time at liberty on parole." 61 Pa. C.S. § 6138(a)(2). The Parole Code does not define "at liberty on parole." However, our Supreme Court has held that "at liberty" does not mean freedom from all types of confinement. Cox, 493 A.2d at 683. A CPV who seeks credit on his original sentence for time spent in a halfway house or group home bears the burden of showing that the specific characteristics of a program

constitute restrictions on the parolee's liberty sufficient to warrant credit. Id. at 683. In our recent decision in Medina, we reiterated the two most important factors to be considered in determining whether a halfway house is sufficiently restrictive so as to be equivalent to incarceration: (1) whether the resident is locked in; and (2) whether the resident is able to leave the facility without being physically restrained. Medina, 120 A.3d at 1120-21. These matters are evaluated on a case-by-case basis, Torres, 861 A.2d at 397, and this Court "will not interfere with the Board's determination . . . unless it acts arbitrarily or plainly abuses its discretion," Cox, 493 A.2d at 683.

Despite the foregoing principles, Johnson requests that this Court adopt the analysis in the concurring opinion in Torres and hold that he established his burden because he suffered at least the same restrictions as pre-release inmates at the same facility, including being subject to random suspicion-less searches. See Torres, 861 A.2d at 402 (Friedman, J., concurring). In Torres, this Court held that the parolee was entitled to credit for the first 45 days spent at the Conewago-Wernersville inpatient drug and alcohol rehabilitation facility because during that time period, the parolee was not permitted to go anywhere outside the facility except to drug and alcohol rehabilitation or other weekly meetings, to which he was escorted by a staff member. Torres, 861 A.2d at 399-400. In so holding, this Court stated that "when the restrictions upon a parolee become such that they destroy any sense of being 'at liberty on parole' and, consequently, meet the Cox standard," credit should be given. Id. at 401. In the concurring opinion in Torres however, Judge Friedman recognized that pre-release inmates residing in such treatment centers always receive credit for their stay. Torres, 861 A.2d at 402 (Friedman, J., concurring). Thus, Judge Friedman posited that parolees should be

8

able to meet their burden under Cox by proving that the restrictions on their liberty are identical to those of pre-release inmates also residing at such facilities. Id.

While Johnson's argument based on the concurring opinion in Torres is a compelling one, Medina is binding here.[6] In Medina, this Court held that "parolees are not entitled to credit for periods in which they reside in community corrections centers (CCCs), [community corrections facilities] CCFs, or inpatient treatment programs where the Board determines the parolees did not meet their burden of proving the restrictions on their liberty were the equivalent of incarceration." Medina, 120 A.3d at 1119. This Court also explicitly rejected the analysis set forth in the concurring opinion in Torres. See Medina, 120 A.3d at 1121-22 ("[C]iting the concurring opinion in Torres . . . Medina claims he met his burden by establishing he was subject to all the rules required of state inmates at Liberty Management CCF. We reject this argument . . . [and have] repeatedly declined to adopt the position advanced by Medina.") (citations omitted). We clarified that "the Cox analysis requires a parolee to show the specific restrictions on *his* liberty at a particular facility are the equivalent of incarceration; thus, the Cox comparison is between restrictions on the parolee at a facility and restrictions on the parolee while he was in prison." Id. at 1123-24 (emphasis in original).

In the instant matter, the Board did not find that Johnson established that he suffered the same restrictions as pre-release inmates at ADAPPT. Instead, the

---

[6] While I continue to respectfully disagree with my colleagues concerning the issue of whether parolees housed at CCCs should also be entitled to credit, like pre-release inmates, for the time they reside in such facilities for the reasons set forth in then-President Judge Pellegrini's dissenting opinion in Medina v. Pennsylvania Board of Probation and Parole, 120 A.3d 1116, 1125-28 (Pa. Cmwlth.) (Pellegrini, J., dissenting), petition for allowance of appeal denied, 120 A.3d 1293 (Pa. 2015), I am constrained to follow this Court's binding decision in that case.

Board specifically credited[7] George's testimony concerning the nature of the ADAPPT facility and made the following relevant findings of fact: the doors are locked only from the outside; anyone could leave the program at any time, there is no fence around ADAPPT; all residents could walk in the community within certain timeframes, provided that they earn the privilege to do so by attending treatment; and staff members do not physically restrain or prevent residents from leaving without permission. (FOF ¶ 3.) Thus, Johnson was not locked in the facility and could have walked right out the door without any staff member stopping him. These findings support the Board's determination that Johnson is not entitled to credit under Cox for the time period he resided at ADAPPT because the conditions there were not sufficiently restrictive so as to be equivalent to incarceration. See, e.g., Harden v. Pa. Bd. of Prob. and Parole, 980 A.2d 691, 699 (Pa. Cmwlth. 2009) ("Facilities are not prison-like if they lack fences or have fences with gates that open from the inside; have doors and windows locked from the outside, not the inside, to prevent entry not exit; lack guards stationed to prevent residents from leaving; and do not attempt to use physical force by staff members to stop an inpatient from leaving.").

Accordingly, we conclude that the Board did not act arbitrarily or plainly abuse its discretion when it denied Johnson credit on his original sentence for the period of time he resided at ADAPPT.

---

[7] "Questions of evidentiary weight and credibility are within the province of the Board . . . and it is free to reject even uncontradicted testimony." Pastuszek v. Pa. Bd. of Prob. and Parole, 544 A.2d 1051, 1053 (Pa. Cmwlth. 1988) (internal citations omitted).

For the foregoing reasons, the Board's Decision is affirmed.


_____
**RENÉE COHN JUBELIRER,** Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Johnson, : 
                    Petitioner :
                                        :
          v. : No. 2009 C.D. 2015
                                        :
Pennsylvania Board of Probation :
and Parole, :
                    Respondent :

# **O R D E R**

**NOW**, July 18, 2016, the Decision of the Pennsylvania Board of Probation and Parole, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin Johnson,                      :
             Petitioner     :
                        :
          v.             :  No. 2009 C.D. 2015
                        :  Submitted:  March 18, 2016
Pennsylvania Board of Probation   :
and Parole,                  :
           Respondent    :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**CONCURRING OPINION BY**
**SENIOR JUDGE COLINS**                      **FILED:  July 18, 2016**

        I concur with the scholarly opinion of the majority.  While the majority opinion is a correct statement of the present law, I think that it is time that this Court revisit *Medina v. Pennsylvania Board of Probation and Parole,* 120 A.3d 1116 (Pa. Cmwlth. 2015), and adopt the rationale of the Honorable Rochelle Friedman's concurring opinion in *Torres v. Pennsylvania Board of Probation and Parole,* 861 A.2d 394, 401 (Pa. Cmwlth. 2004).

        I question the wisdom of imposing lengthy punitive sentences for marijuana possession offenses.  In an era when smoking marijuana is legal in several states, I question imposing extensive and expensive periods of incarceration when the cost of maintaining our state prison system is almost 7% of the Commonwealth budget.

                                     **JAMES GARDNER COLINS, Senior Judge**