Michael MEEHAN, Petitioner,

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 19, 2002.

Decided Oct. 3, 2002.

---

James M. McClure, Huntingdon, for petitioner.

Arthur R. Thomas, Harrisburg, for respondent.

Before FRIEDMAN, Judge, SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Michael Meehan petitions for review of the February 12, 2002 order of the Pennsylvania Board of Probation and Parole (Board) that denied Meehan's administrative appeal from the Board's December 6, 2001 decision finding that Meehan was at liberty on parole from his sixteen-year state prison sentence and, therefore, not entitled to custodial credit for the time he resided at Keenan House, a licensed inpatient drug and alcohol treatment clinic. Meehan contends that the Board erred in not crediting him for the 192 days he spent at Keenan House, a restrictive placement mandated by the Board. We affirm.

Meehan was originally sentenced to a term of six years, eleven months to sixteen years for the offenses of aggravated assault and terroristic threats. His original maximum date was May 19, 2005.

On July 28, 1997, Meehan was paroled to treatment at Keenan House, where he resided until February 6, 1998, when he completed the program. Subsequently, Meehan was declared delinquent by the Board effective October 5, 1998. Meehan was later arrested on three separate occasions for driving under the influence: March 10, July 7 and December 17, 1999.

On December 17, 1999, the Board filed a detainer warrant and Meehan was taken into custody by parole agents. By order dated February 8, 2000, the Board recommitted Meehan as a technical parole violator to serve twelve months backtime, when available. By order dated April 12, 2000, the Board recommitted Meehan as a convicted parole violator to serve twelve months backtime, when available, to run concurrently with the twelve months backtime imposed for the technical violations. By order dated November 13, 2000, the Board recalculated Meehan's new maximum date at January 7, 2008. Meehan was not given credit for the time he spent in Keenan House from July 28, 1997 through February 6, 1998.

Meehan filed an administrative appeal from the Board's recalculation order, which was denied by the Board's January 30, 2001 order. Meehan appealed that order to this Court on the ground that Keenan House's restrictions were custodial in nature and that, therefore, he should have received credit against his sentence for the time he spent there. Citing *Cox v. Pennsylvania Board of Probation and Pa-*

*role,* 507 Pa. 614, 493 A.2d 680 (1985), we determined, given Meehan's allegations of the restrictive nature of Keenan House, that the Board must develop a record at a subsequent recommitment hearing and make factual findings as to whether Meehan's participation in such a program constituted time at liberty on parole for which no credit is given. *See Meehan v. Pennsylvania Board of Probation and Parole (Meehan I),* 783 A.2d 362 (Pa.Cmwlth. 2001). Hence, we vacated the Board's order and remanded the case for an evidentiary hearing to provide Meehan an opportunity to present evidence regarding the custodial aspects of Keenan House.

■ On October 23, 2001, an evidentiary hearing was held at SCI Huntingdon. Based on the evidence presented, including the testimony of Keenan House Clinical Director Vanessa Choma, the Board determined in its December 6, 2001 decision that Meehan was at liberty on parole while he resided at Keenan House. Meehan filed an administrative appeal from that decision, which the Board denied by order dated February 12, 2002. Meehan's appeal to this Court followed.[1]

Meehan contends that his recalculated maximum date was improperly computed because the Board failed to credit him for the time he spent at Keenan House. Specifically, Meehan claims that the Board failed to properly consider the restrictive nature of the program, which he maintains was "akin to incarceration." In addition, Meehan contends that the Board's denial of credit to parolees while permitting pre-release inmates to receive credit for time spent in Keenan House is patently unjust and constitutes a violation of the Equal

---

1. Our review of the Board's order is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Wiley v. Pennsylvania Board of Probation and Parole,* 801 A.2d 644 (Pa. Cmwlth.2002).

Protection Clause of the Fourteenth Amendment.

## I.

■ We will first address the issue of whether the Board erred in determining that Meehan was not entitled to credit for the time he spent at Keenan House. In its February 12, 2002 letter, the Board stated:

The Board did not abuse its discretion by determining that [Meehan] did not meet his burden of showing specific characteristics of the Keenan House program that constituted restrictions on his liberty sufficient to warrant credit. The evidence showed [that Meehan] could have removed himself by simply walking through doors that were not locked in such a way as to prevent one on the inside of Keenan House from leaving, and that no one would have tried to stop [Meehan] from walking out one of those doors.

Certified Record (C.R.) 169.

Choma, Clinical Director of Keenan House, testified that Keenan House is a licensed drug and alcohol treatment facility located in a five-story renovated warehouse at 18 South Sixth Street in Allentown. C.R. 56–57. The patients at Keenan House are considered clients, not inmates. *Id.* at 57. The doors to the facility are push-through doors which can only be locked to prevent people outside from entering the building. *Id.* at 72–73; 85. Moreover, if an individual leaves the building, nobody at Keenan House is allowed to restrain that person. *Id.* at 86–87.

Choma further testified that there are no bars on the windows, no razor wire and no fences. *Id.* at 88. If a parolee left the building, it would not be considered an escape. *Id.* at 87. Rather, that person is considered an absconder in violation of his parole. *Id.* In addition, a patient may leave the building escorted by another patient. *Id.* at 88–89. In fact, Meehan was permitted to leave the facility without an escort to go to medical appointments and even to go to work while employed by a temporary employment agency. *Id.* at 89–90.

Moreover, when asked whether Keenan House is credited as being a level one minimum security prison, Choma replied that "we are not considered a prison at all." *Id.* at 60–61. If someone walked out, Keenan House would notify their referral source. *Id.* at 66.

Nevertheless, Meehan points out in his brief that Choma also testified that there are three counts a day, which are reported to the Department of Corrections (DOC). *Id.* at 67. In addition, the first floor windows are alarmed and an audible alarm will sound if those windows are opened. *Id.* at 73. If a parolee left the building, his absence would be reported to both the DOC and his parole officer. *Id.* at 60.

■ As we recognized in *Meehan I*, "[a] parolee bears the burden of proving that a program's characteristics *are so restrictive as to constitute the equivalent of incarceration* and, thus, warrant credit for time spent there." 783 A.2d at 364 (emphasis added). "Moreover, we may not disturb the Board's determination unless it acted arbitrarily or abused its discretion." *Id.*

Although the evidence indicates that parolees are closely monitored at Keenan House, we nonetheless believe that it supports the Board's determination that Meehan failed to meet his burden of proving that the conditions at Keenan House were so restrictive as to constitute the equivalent of incarceration. In particular, as the Board noted, Meehan was not locked in and could have walked right out the door. Nobody at Keenan House would have been authorized to stop him. In addition, a

parolee who left Keenan House would not be considered an escapee, but a parole absconder.

In *Jackson v. Pennsylvania Board of Probation and Parole*, 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990), this Court encountered a similar situation where a parolee claimed to be entitled to time spent in an in-patient treatment program. In rejecting the parolee's claim based upon a review of the facts, we stated:

> The Board found that Eagleville Hospital is not a secure facility. The doors to the hospital are not locked, there is no fencing around the facility, and the hospital does nothing to stop the patients from leaving. Additionally, the hospital does not treat parolees differently than other patients with the exception that if the parolee were to leave the hospital before completing the program, the hospital would notify the parole authorities. Based on these facts, the Board found that the in-patient program does not have sufficient custodial aspects to characterize the time spent there as confinement rather than at liberty. We conclude that the Board has neither acted arbitrarily nor abused its discretion.

*Id.* at 1006.

In accord with *Jackson*, we believe that the conditions at Keenan House are not so restrictive as to be considered the equivalent of incarceration. Hence, we conclude that the Board neither acted arbitrarily nor abused its discretion in determining that Meehan was at liberty on parole while at Keenan House. *Id.*

## II.

■ Meehan also contends that permitting pre-release inmates to receive credit for time spent in Keenan House while denying such credit to parolees for time spent in Keenan House is patently unjust and violates his right to equal protection under the Fourteenth Amendment. This Court disagrees.

As Meehan correctly noted in his brief, under Pennsylvania law, a prisoner may not be paroled before serving his minimum sentence. *Krantz v. Pennsylvania Board of Probation and Parole*, 86 Pa.Cmwlth. 38, 483 A.2d 1044 (1984). As a result, pre-release inmates at Keenan House are deemed to be in custody, not at liberty. Thus, if a pre-release inmate leaves Keenan House, he can be convicted of felony or misdemeanor escape under Section 5121 of the Crimes Code, 18 Pa.C.S. § 5121, which will result in the imposition of an additional sentence.

A person commits the offense of escape "if he unlawfully removes himself from *official detention* or fails to return to official detention following temporary leave granted for a specific purpose or limited period." Section 5121(a) of the Crimes Code, 18 Pa.C.S. § 5121(a) (emphasis added). *Official detention* "means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; *but the phrase does not include supervision of probation or parole*, or constraint incidental to release on bail." Section 5121(e) of the Crimes Code, 18 P.S. § 5121(e) (emphasis added).

Consequently, a parolee in an in-patient treatment program like Keenan House is not deemed to be in official detention, but rather at liberty on parole. *Jackson.* Therefore, a parolee cannot be charged with escape for leaving Keenan House. As such, parolees, who are at liberty on parole while at Keenan House, are not similarly situated with pre-release inmates, who are deemed to be in *official detention*, for purposes of credit for time spent at Keen-

an House. Hence, the Board's denial of credit for the time that Meehan spent at Keenan House does not constitute a violation of the Equal Protection Clause.

In view of the foregoing, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 3rd day of October, 2002, the February 12, 2002 order of the Pennsylvania Board of Probation and Parole is hereby AFFIRMED.