**1116**

Nelson MEDINA, Petitioner,

v.

PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 18, 2015.

Decided July 16, 2015.

David R. Crowley, Chief Public Defender, Bellefonte, for petitioner.

Kara W. Haggerty, Assistant Counsel, Harrisburg, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge ROBERT SIMPSON.

In this appeal, Nelson Medina (Medina), an inmate incarcerated at the State Correctional Institution at Rockview, asks whether the Pennsylvania Board of Probation and Parole (Board) erred in denying him credit for a 79–day period he spent at Liberty Management Community Corrections Facility (Liberty Management CCF). In accordance with our Supreme Court's seminal decision in *Cox v. Pennsylvania Board of Probation and Parole*, 507 Pa. 614, 493 A.2d 680 (1985), the Board determined Medina did not meet his burden of showing the restrictions on his liberty for the 79 days he resided at Liberty Management CCF were the equivalent of incarceration. In *Cox*, the Supreme Court cautioned this Court not to interfere with the Board's exercise of discretion in making such a decision unless it acts arbitrarily or plainly abuses its discretion. Because the record amply supports the Board's factual findings and because the Board's decision comports with *Cox* and its progeny, we affirm.

**I. Background**

In 2011, the Board paroled Medina to Liberty Management CCF. Medina resid-

ed at Liberty Management CCF on parole from November 21, 2011 until February 8, 2012, a 79–day period.

About a week after his discharge from Liberty Management CCF, police arrested Medina on a new criminal charge. The Board detained Medina pending disposition of this criminal charge.

The Board subsequently recommitted Medina to a state correctional institution as a convicted parole violator to serve 18 months' backtime after his conviction on the criminal charge. The decision also recalculated Medina's parole violation maximum date, which provided no credit for the 79–day period Medina resided at Liberty Management CCF.

Medina challenged the Board's denial of credit for the 79–day period in which he resided at Liberty Management CCF. The Board scheduled a hearing as required by *Cox* to determine the custodial nature of the program at Liberty Management CCF. A hearing examiner held a hearing at which Medina, represented by a public defender, and Karen Sans, director of Liberty Management CCF (Director), testified. A parole agent appeared in opposition to Medina's request.

Thereafter, the Board issued a decision in which it determined Medina did not meet his burden of proving he was entitled to credit for the 79–day period he resided at Liberty Management CCF. Medina filed an administrative appeal, which the Board denied. Medina now petitions for review to this Court.

## II. Discussion

### A. Contentions

On appeal,[1] Medina asserts that, in re-computing his parole violation maximum date after his recommitment as a convicted parole violator, the Board failed to credit his original sentence with all the time to which he was entitled when it erroneously determined he was at liberty on parole while confined by the Board at Liberty Management CCF.

Medina argues he produced uncontroverted evidence that immediately after his release on parole he was directed to report to a CCF where his liberty was sufficiently restrained such that it was the functional equivalent of incarceration. At this CCF, he was confined with individuals actually serving state prison sentences. Medina contends the restrictions on his liberty were at least as onerous as the restrictions on those state prisoners because he was subject to all the rules and regulations of those inmates.

Further, the restrictions on his liberty while confined at this facility were more onerous than release on parole as he was required, like any other prisoner, to abandon his constitutional privacy protections by submitting to random suspicion-less searches of his person and property. Thus, he maintains, this time at the CCF was the functional equivalent of incarceration and not subject to forfeiture after his subsequent recommitment as a convicted parole violator.

The Board responds it did not act arbitrarily or plainly abuse its discretion by deciding Medina was not entitled to credit for the period he resided at Liberty Management CCF. Based on testimony offered at the hearing, the Board found specific facts were established about the facility, including: residents were permitted to leave the facility without escort; residents were not locked in the facility; rooms were

---

1. As stated throughout this opinion, our review of a Board order denying credit under these circumstances is limited to considering whether the Board acted arbitrarily or abused its discretion. *Cox v. Pa. Bd. of Prob. & Parole,* 507 Pa. 614, 493 A.2d 680 (1985).

not locked at night; residents were permitted to travel to other parts of the building unescorted; residents were permitted to sign out to leave the facility; and, while all residents were subject to search during their residency, the reasons for the random searches was to ensure the security of residents and staff. Additionally, Director testified that while pre-release inmates and parolees were both at the facility at this time, the programming was completely different for the pre-release inmates.

The Board contends the primary difference between parolees and pre-release inmates was that if a parolee left the facility without permission or failed to return, the state parole office was contacted. Parolees were never charged with escape. If the same situation arose with a pre-release inmate, the state police were contacted and escape charges were filed. Those facts support a determination that Medina's time at Liberty Management CCF was not the equivalent of incarceration. Thus, the Board maintains, its decision to deny him credit for the period at issue is supported by the record.

#### B. Analysis

 Pursuant to 6138(a) of the Prisons and Parole Code (Code) provides, in relevant part:

**(a) Convicted violators.—**

(1) A parolee under the jurisdiction of the [B]oard released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of

record, may at the discretion of the board be recommitted as a parole violator.

(2) If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and … *shall be given no credit for the time at liberty on parole.*

*Id.* (emphasis added).

Construing the statutorily undefined phrase "at liberty on parole," in its seminal decision in *Cox,* our Supreme Court explained:

We have never conclusively defined 'at liberty on parole,' nor have we had the opportunity to pass upon whether persons attending treatment programs … are 'at liberty on parole.' We have previously interpreted the phrase to include 'street time,' though the concepts are not synonymous. *See Young v. Commonwealth Board of Probation and Parole,* [409 A.2d 843 (Pa.1979)]. We made this clear in *Hines v. Pennsylvania Board of Probation and Parole,* [420 A.2d 381 (Pa.1980)], where we held that 'at liberty on parole' included time spent on constructive parole. We said:

[The parolee] next asserts that he is entitled to credit against his original sentence for the one year spent on constructive parole, citing [*former*] Section 21.1 of the Parole Act, 61 P.S. § 331.21a(a)[ [2] ],

. . . .

[The parolee] argues that because he was in prison while on constructive parole, he was not 'at liberty on parole.' In *Haun v. Cavell* [190

---

**2.** *Former* Act of August 6, 1941, P.L. 861, *as amended,* formerly added by Section 5 of the Act of August 24, 1951, P.L. 1401, *as amended.* The Parole Act was repealed by the Act of August 11, 2009, P.L. 147, No. 33. Similar language is now codified at 61 Pa.C.S. § 6138(a)(1), (2), as set forth above.

Pa.Super. 346], 154 A.2d 257, 261 (Pa.Super.1959) the Superior Court addressed this question:

What the legislature must have intended by 'at liberty on parole' is not at liberty from all confinement but *at liberty from confinement on the particular sentence for which the convict is being reentered as a parole violator.* Any other interpretation would be in conflict with other provisions of the statute, and with the long established policy of the Commonwealth. During the time that a convict may be on parole from a particular offense he might be confined in a Pennsylvania prison on another offense, or in a prison of another state, or in a federal prison, or in a mental institution, or in an enemy prison camp during a war. It was not the intent of the legislature to have the words 'at liberty' to mean freedom from confinement under all these and other conceivable circumstances. (Emphasis supplied).

We approved this construction of the Parole Act in *Commonwealth ex rel. Jones v. Rundle,* [413 Pa. 456, 199 A.2d 135 (1964)] (per curiam). Accordingly, [the parolee] was 'at liberty on parole' from his first sentence while incarcerated on his second sentence from August 29, 1975 to August 29, 1976, and is not entitled to credit against his original sentence for that one year on constructive parole.

*Id.,* [420 A.2d at 384].

*Cox,* 493 A.2d at 682–83.

At issue in *Cox* was whether a parolee was "at liberty on parole" during the period in which he resided in an inpatient drug treatment program. Although the Supreme Court ultimately remanded for development of a factual record on this issue, it espoused certain principles by which to evaluate a parolee's claim for credit in these circumstances. Specifically, the Court in *Cox* determined: (1) because the parolee agreed to attend the inpatient treatment program as a condition of his parole, his attendance there was presumed to be "at liberty on parole"; (2) it was, therefore, the parolee's burden to develop a factual record and persuade the Board that "the program presented an environment so restrictive that he should get credit for the time spent in it[,]" *i.e.,* that the specific characteristics of the program constituted restrictions on his liberty that were equivalent to incarceration; and, (3) a reviewing court should not interfere with the Board's determination of that issue unless the Board acted "arbitrarily" or "plainly abuse[d] its discretion." *Id.* at 681, 683.

In accordance with these principles, this Court repeatedly holds that parolees are not entitled to credit for periods in which they reside in community corrections centers (CCCs), CCFs, or inpatient treatment programs where the Board determines the parolees did not meet their burden of proving the restrictions on their liberty were the equivalent of incarceration. *See Harden v. Pa. Bd. of Prob. & Parole,* 980 A.2d 691, 699 (Pa.Cmwlth.2009) (*en banc*) (parolee not entitled to credit for periods in which he resided at facilities, one of which was a privately run Department of Corrections (DOC) institution that housed parolees and prisoners, where structural conditions at facilities were not "prison-like" and rules were not so restrictive as to make facilities equivalent of prisons); *Figueroa v. Pa. Bd. of Prob. & Parole,* 900 A.2d 949 (Pa.Cmwlth.2006) (parolee not entitled to credit for period in which he resided in privately-run CCC where parolee was not locked in facility and could leave unescorted); *Wagner v. Pa. Bd. of Prob. & Parole,* 846 A.2d 187 (Pa.Cmwlth. 2004) (parolee not entitled to credit for

period in which he resided in CCF where, among other things, parolee was not prevented from leaving, could leave unescorted on a pass, and staff members could not restrain parolee from leaving, but rather only report to parole authorities); *Meehan v. Pa. Bd. of Prob. & Parole*, 808 A.2d 313 (Pa.Cmwlth.2002) (parolee not entitled to credit for period in which he resided at an inpatient drug and alcohol treatment clinic where parolee was not locked in, no one at clinic could stop him if he left, and parolee would be treated as an absconder rather than an escapee); *Jackson v. Pa. Bd. of Prob. & Parole*, 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990) (parolee not entitled to credit for period in which he resided at facility where doors were not locked, facility had no fences and staff did nothing to prevent parolee from leaving); *Williams v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 1412 C.D. 2013, filed March 26, 2014), 2014 WL 1259128 (unreported) (parolee not entitled to credit for periods in which he resided at CCFs where residents were not locked in, staff was prohibited from stopping residents from leaving, residents were not escorted on or off the premises, residents were given passes to leave facilities, and residents could maintain employment and address treatment issues in community and could obtain social passes); *Hontz v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 1345 C.D. 2012, filed April 19, 2013), 2013 WL 3973702 (unreported) (parolee not entitled to credit for period in which he resided at CCC where he could leave facility without an escort, facility did not have locked doors, and parolee acknowledged he could leave facility for appointments unescorted); *Brooks v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 856 C.D. 2012, filed January 14, 2013), 2013 WL 3947848 (unreported) (parolee not en-

titled to credit for period in which he resided at drug treatment facility where facility doors were not locked, no one would attempt to restrain parolee if he attempted to leave and he would not be charged with escape but as a parole absconder); *Thomas v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 1334 C.D. 2011, filed April 13, 2012), 2012 WL 8682085 (unreported) (parolee not entitled to credit for periods in which he resided in two privately owned CCFs where facilities were not fenced in, doors were not locked from outside, and neither facility had guards to physically restrain parolees from absconding); *Rosa–Perez v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 2548 C.D. 2010, filed August 2, 2011), 2011 WL 10878166 (unreported), *appeal denied*, 613 Pa. 655, 34 A.3d 84 (2011) (parolee not entitled to credit for period in which he resided in halfway house or CCF where he could leave facilities without escort, and facilities did not resemble prisons); *accord Detar v. Pa. Bd. of Prob. & Parole*, 890 A.2d 27 (Pa.Cmwlth.2006); *Willis v. Pa. Bd. of Prob. & Parole*, 842 A.2d 490 (Pa. Cmwlth.2004); *Burke v. Pa. Bd. of Prob. & Parole*, (Pa.Cmwlth., No. 775 C.D. 2013, filed February 11, 2014), 2014 WL 546709 (unreported); *Banos v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 2002 C.D. 2012, filed March 27, 2013), 2013 WL 3984512 (unreported); *Saez v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 1162 C.D. 2012, filed January 17, 2013), 2013 WL 3960619 (unreported); *Wise v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 1054 C.D. 2008 filed November 7, 2008), 2008 WL 9396741 (unreported).[3]

■ "The most important factors [in determining whether a program is sufficient-

---

3. Pursuant to Commonwealth Court Internal Operating Procedure 414, 210 Pa.Code § 69.414, an unreported panel decision of the Commonwealth Court, issued after January 15, 2008, may be cited for its persuasive value.

ly restrictive so as to be equivalent to incarceration] are '*whether the ... resident ... is locked in* and *whether the [resident] may leave without being physically restrained.*'" *Figueroa*, 900 A.2d at 952 (quoting *Detar*, 890 A.2d at 31) (emphasis added); *see, e.g., Williams; Hontz; Banos; Saez; Wise.*

Applying this well-defined body of law, the Board here made the following findings of fact and conclusions of law (with emphasis added):

[Medina] was a resident at Liberty Management [CCF] from 11/21/11 to 2/8/12. There was sufficient testimony that he was released on parole to reside at this facility. [Medina] testified that he was permitted to sign out for doctor appointments, employment searches and to attend school. He also testified that the room that he resided in was not locked at night and he was freely permitted to travel to other parts of the building without escort.

Through credible testimony from the [Director], it was established that this facility is privately run and [DOC] Officers are not employed there. *Staff are unable to restrain or attempt to stop residents if they wish to leave the facility. Although pre-release inmates were also at this facility at the time that [Medina] was a resident, the [Director] provided credible testimony that the programming is completely different for the pre-release inmates. In addition, the procedure in place for notification of an unauthorized walk out or failure to return was different. If a parolee left the facility without permission or failed to return, parole staff was contacted ....*

\*　\*　\*　\*　\*　\*

1. A convicted parole violator who seeks credit against his/her parole violation maximum sentence for time spent in an inpatient program has the burden of showing the specific characteristics of that program which constitute restrictions on liberty sufficient to warrant credit on recomputed backtime. [*Cox* ].

2. The determination of whether [Medina] is entitled to credit for time he resided at Liberty Management [CCF] is a factual determination as to the nature of Liberty Management [CCF] and whether the restrictions on [Medina's] liberty there were the equivalent of incarceration. [*Cox*, 493 A.2d at 683].

3. [Medina] bears the burden to show the specific characteristics of Liberty Management [CCF] that constituted restrictions on his liberty sufficient to warrant credit on his recomputed backtime, and persuade the Board of that fact. [*Cox*, 493 A.2d at 683].

4. [Medina] did not meet the burden of proving that he was entitled to credit under [*Cox* ] for his placement at Liberty Management [CCF] from 11/21/11 to 2/8/12. [Medina] was paroled to Liberty Management [CCF] and *while he was a resident at this facility, he was permitted to leave this facility, without escort. He was not locked in the facility, his room was not locked at night, and he was permitted to travel to other parts of the building unescorted ....*

Bd. Op., 9/23/13, at 2. The Board's factual determinations are amply supported by the record. *See* Certified Record (C.R.) at 37–39, 41–43; Board Evidentiary Hr'g, Notes of Testimony (N.T.), 7/24/13, at 12–14, 16–18. Thus, no abuse of discretion is apparent in the Board's denial of Medina's request for credit for the 79 days in which he resided at Liberty Management CCF. *See, e.g., Figueroa; Wagner; Meehan; Williams; Hontz.*

Nevertheless, citing the concurring opinion in *Torres v. Pennsylvania Board of Probation and Parole*, 861 A.2d 394 (Pa.

Cmwlth.2004) (*en banc*) (Friedman, J., concurring), Medina asks that we revisit this analysis and hold that a parolee who proves that the place of his residential treatment was a CCF meets his burden of establishing he was not at liberty on parole when he shows he suffered at least the same restrictions as pre-release inmates serving a state sentence at the same facility. Medina claims he met his burden by establishing he was subject to all the rules required of state inmates at Liberty Management CCF. We reject this argument for multiple reasons.

First, this Court repeatedly declined to adopt the position advanced by Medina. *See Harden; Detar; Meehan; Williams; Hontz; Rosa–Perez; VanHook v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 1675 C.D. 2010, filed April 15, 2011), 2011 WL 10845875 (unreported); *Pierre v. Pa. Bd. of Prob. & Parole* (Pa.Cmwlth., No. 1110 C.D. 2008, filed July 21, 2009), 2009 WL 9097027 (unreported); *Rodriguez v. Pa. Bd. of Prob. & Parole*, (Pa.Cmwlth., No. 800 C.D. 2008, filed August 12, 2008), 2008 WL 9396729 (unreported). It is jurisprudentially unsound and in violation of the fundamental principle of *stare decisis* for this Court to unsettle an area of law that we recently settled. *See Gardner v. Consol. Rail Corp.*, 524 Pa. 445, 573 A.2d 1016 (1990); *Fagan v. Dep't of Transp. of Commonwealth*, 946 A.2d 1123 (Pa.Cmwlth. 2008).

In three recent, unreported cases in which the Centre County Public Defender's Office raised the same argument it now raises on Medina's behalf, premised on the *Torres* concurrence, this Court squarely rejected that argument. *See Williams; Rosa–Perez; VanHook*. Thus, in *Williams*, a panel of this Court rejected the *identical* arguments raised by Medina here and denied the parolee's request for credit for the periods in which he resided in three CCFs under contracts with DOC, like the CCF here. We did so despite the parolee's testimony and argument that he was subject to the same or greater restrictions than pre-release inmates who resided at the CCFs. In so doing, we excerpted the Board's finding that, "while parolees and pre-release inmates were treated the same way and were afforded basically the same privileges, the primary difference was that if a parolee walked away from the facility the parole office was contacted and if a pre-release inmate walked away, the police were notified and escape charges were filed." *Id.*, slip op. at 10, 2014 WL 1259128 at *4.

Moreover, in *Rosa–Perez*, we rejected the parolee's assertion that this Court should re-evaluate its prior holdings in light of the concurring opinion in *Torres*, explaining: "[N]either this Court nor our Supreme Court has altered the analysis with regard to parolees. *The majority's approach in Torres, which requires a court to consider the specific restrictions a particular type of [CCC] imposes, still applies.*" *See Rosa–Perez*, slip op. at 11, 2011 WL 10878166 at *6 (emphasis added).[4] The Supreme Court subsequently

---

4. In *Meehan v. Pennsylvania Board of Probation and Parole*, 808 A.2d 313, 317–18 (Pa. Cmwlth.2002), *appeal denied*, 573 Pa. 669, 820 A.2d 706 (2003), this Court expressly rejected the parolee's argument that permitting pre-release inmates to receive credit for time spent in Keenan House, a licensed inpatient drug and alcohol treatment clinic, while denying such credit to parolees for time

spent in the same facility was unjust and violated his equal protection right, explaining:

As [the parolee] correctly noted in his brief, under Pennsylvania law, a prisoner may not be paroled before serving his minimum sentence. *Krantz v. Pennsylvania Board of Probation and Parole* [86 Pa. Cmwlth. 38], 483 A.2d 1044 (Pa.Cmwlth. 1984). As a result, pre-release inmates at

denied the parolee's petition for allowance of appeal.

Additionally, in *VanHook*, this Court explained:

We agree with the Board that the standard imposed by *Cox*, [493 A.2d at 683], is whether the restrictions placed on a parolee's liberty 'were the equivalent of incarceration.' Thus, even if [the parolee] could establish that the restrictions placed on him were greater than the restrictions placed on pre-release inmates, he still has not met his burden of establishing whether the restrictions were the equivalent of incarceration. . . .

*Cox* established that there is a presumption that the time [the parolee] spent at the [CCF] was time spent at liberty on parole. It was [the parolee's] burden to rebut that presumption by establishing with competent evidence the characteristics of the [CCF] that made time spent there the equivalent of incarceration. Instead, the evidence established that the terms of his parole permitted unescorted travel for personal errands and the ability to leave, unrestrained by staff, at any time. As we have already explained in *Detar* and *Fi-*

*gueroa*, this type of confinement is not the equivalent of incarceration.

Likewise, as explained in *Meehan* and *Harden*, there are reasons for treating pre-release inmates and parolees differently. However, even if [the parolee] was placed under greater restrictions than pre-release inmates in certain limited circumstances, it is irrelevant to his burden of proving that the restrictions on his liberty rose to the level of incarceration.

*Id.*, slip op. at 8–9, 2011 WL 10845875 at *4–*5. Medina offers no reason to reverse course and disavow *Williams, Rosa–Perez*, and *VanHook*, a line of recent, persuasive precedent that squarely rejected the same argument he advances here.

In addition, the analysis in the concurring opinion in *Torres*, which compares the restrictions imposed on parolees housed at CCFs, CCCs or inpatient treatment programs with the restrictions imposed on pre-release inmates under DOC's jurisdiction, differs from the analysis espoused by our Supreme Court in *Cox*. The *Cox* analysis requires a parolee to show the specific restrictions on *his* liberty at a particular

---

Keenan House are deemed to be in custody, not at liberty. Thus, if a pre-release inmate leaves Keenan House, he can be convicted of felony or misdemeanor escape under Section 5121 of the Crimes Code, 18 Pa. C.S. § 5121, which will result in the imposition of an additional sentence.

A person commits the offense of escape 'if he unlawfully removes himself from *official detention* or fails to return to official detention following temporary leave granted for a specific purpose or limited period.' Section 5121(a) of the Crimes Code, 18 Pa.C.S. § 5121(a) (emphasis added). *Official detention* 'means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; *but the phrase does not include supervision of probation or pa-*

*role, or constraint incidental to release on bail.*' Section 5121(e) of the Crimes Code, 18 [Pa.C.S.] § 5121(e) (emphasis added).

Consequently, a parolee in an in-patient treatment program like Keenan House is not deemed to be in official detention, but rather at liberty on parole. *Jackson [v. Pa. Bd. of Prob. & Parole*, 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990)]. Therefore, a parolee cannot be charged with escape for leaving Keenan House. As such, parolees, who are at liberty on parole while at Keenan House, are not similarly situated with pre-release inmates, who are deemed to be in official detention, for purposes of credit for time spent at Keenan House. Hence, the Board's denial of credit for the time that [the parolee] spent at Keenan House does not constitute a violation of the Equal Protection Clause.

facility are the equivalent of incarceration; thus, the *Cox* comparison is between restrictions on the parolee at a facility and restrictions on the parolee when he was in prison.

Recognizing this problem, in his brief to this Court, Medina states:

> *Cox* clearly burdens the parolee with proving specific facts showing a loss of liberty that equates with incarceration during Board ordered treatment. [Medina] concedes that if all he established at his [e]videntiary [h]earing was that pre-release inmates also resided at that facility, he cannot meet his burden under *Cox*. . . .
>
> Rather than rest his hope for relief on another convert to the dissenting view in *Harden*, [Medina] implores the Court to look to Judge Friedman's prescient concurrence in *Torres* and find that the parolee who proves that the place of his residential treatment was a[CCF] meets his burden of establishing that he was not at liberty on parole when he establishes that he suffered at least the same restrictions as pre-release inmates serving a state sentence at that same facility. *[Medina] submits that he met his burden by establishing that his [sic] was subject to all the rules required of the state inmates.*

Br. for Pet'r at 18–19 (emphasis added).

Contrary to Medina's assertions, the Board here did not find Medina established he suffered the same restrictions as pre-release inmates serving state sentences at Liberty Management CCF. Rather, the Board here credited Director's testimony, finding: "Although pre-release inmates were also at this facility at the time that [Medina] was a resident, *[Director] provided credible testimony that the programming* [5] *is completely different for the pre-release inmates.* In addition, the procedure in place for notification of an unauthorized walk out or failure to return was different." Bd. Op., 9/23/13, at 2 (emphasis added). In light of the Board's supported finding that the programming is "completely different" for pre-release inmates and parolees, C.R. at 42–43; N.T. at 17–18, Medina did not clearly show he was subject to the same restrictions as pre-release inmates under DOC's custody.

While the testimony regarding the programming lacks additional detail, Medina's attorney had the opportunity for further inquiry. Moreover, the specificity of the testimony is a matter to be weighed by the fact-finder, not a matter to be re-weighed by this Court under the guise of a "substantial evidence" review. We must defer to the Board, as fact-finder, on this factual issue rather than opting for our own interpretation of the evidence. *See Pastuszek v. Pa. Bd. of Prob. & Parole*, 118 Pa. Cmwlth. 6, 544 A.2d 1051 (1988) (it is the Board's exclusive province as fact-finder to assess the credibility of witnesses and assign the appropriate weight to their testimony; the Board is free to reject even uncontradicted testimony).

Of further significance, and as briefly alluded to at the *Cox* hearing here, C.R. at 43; N.T. at 18, DOC's pre-release program no longer exists. Indeed, at oral argument the Board's counsel informed this Court of the cessation of the pre-release program. This fact, coupled with changes to the statutory regime governing parolees, *see* 61

---

5. While Director did not specifically elaborate on the term "programming," Medina, who bore the burden of proof, did not specifically inquire further as to the meaning of the term. In any event, any issue regarding the precision of Director's testimony goes to the weight of that testimony, not whether it adequately supports the Board's finding, which it clearly does.

Pa.C.S. §§ 5003, 6138, as well as policy changes, make clear that the fact pattern now before us will not be repeated going forward. For this additional reason, the "sea change" advocated by Medina is unavailing.[6]

Finally, the argument offered by Medina has the potential for absurd consequences. For example, a parolee in a CCF could be granted credit for his stay because there were pre-release inmates also residing at the facility at the same time, but another parolee at the same facility and under the same restrictions would not be granted credit if there were no pre-release inmates there during his stay. Similarly, a parolee in a CCF could be granted part credit for his stay because there were pre-release inmates residing at the facility for part of the time, but the same parolee under the same restrictions would not be given credit for the remainder of his stay if there were no re-release inmates at the facility for the entire length of his residency. Because of these potential consequences, it is more prudent to adhere to the Supreme Court's *Cox* analysis than to adopt some other method.

For all the foregoing reasons, we affirm.

## ORDER

**AND NOW,** this 15th day of July, 2015, the order of the Pennsylvania Board of Probation and Parole is **AFFIRMED.**

DISSENTING OPINION BY President Judge DAN PELLEGRINI.

Section 21.1a(a) authorizes the Board to recommit a parolee who, "during the period of parole ... commits any crime punishable by imprisonment, from which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter...." If the Board recommits a parolee as a convicted parole violator under this provision, he is required to serve the remaining term of imprisonment that he would have had to

---

**6.** Medina also argues he was subject to random, suspicion-less searches for security reasons while housed at Liberty Management CCF, which further shows he was not at liberty on parole when he resided at this facility. Rejecting an identical argument in *Williams v. Pennsylvania Board of Probation and Parole* (Pa.Cmwlth., No. 1412 C.D. 2013, filed March 26, 2014), 2014 WL 1259128 (unreported), this Court stated:

[T]he fact that [the parolee] was subject to a random suspicion-less search for security reasons while housed at [a CCF] does not convert his stay there into confinement for purposes of credit. As noted by the Board, as a special condition of his parole, [the parolee] agreed to obey all the established rules of the community corrections residency and actively participate in the community corrections residency until successfully discharged, and he consented to follow all [DOC] rules and regulations, and all rules, regulations and directives of the [CCF]. As also noted by the Board, [the CCF representative] testified that all residents of the facility, including pre-release prisoners and pa-

rolees, were subject to random searches for security reasons. Such a requirement as a special condition of parole does not transform [the parolee's] residency at [the CCF] into confinement for purposes of credit. *See, e.g., Detar [v. Pa. Bd. of Prob. & Parole,* 890 A.2d 27, 31 (Pa.Cmwlth.2006)].

*Id.,* slip op. at 11, 2014 WL 1259128 at *5 (record citations and footnote omitted). This analysis applies with equal force here. See C.R. at 44–46, N.T. at 19–21; C.R. at 52, Ex. S–1; C.R. at 8–16. Further, like the parolee in *Williams,* Medina

*does not argue that his consent to such a search under the foregoing special conditions was either unknowing or involuntary or that a search conducted pursuant to such special conditions violates his constitutional rights.... [H]e merely argues that the search conducted pursuant to those special conditions transformed his residency at [the facility] from 'at liberty' on parole to confinement for purposes of credit.*

*Id.,* slip op. at 11, 2014 WL 1259128 at *5 n. 3 (emphasis added) (citations omitted).

serve if he had not been paroled and is given no credit for time spent "at liberty on parole." 61 P.S. § 331.21a(a).[1]

The Parole Act does not define the phrase "at liberty on parole." However, in *Cox v. Pennsylvania Board of Probation and Parole,* 507 Pa. 614, 493 A.2d 680 (1985), our Supreme Court explained that "at liberty on parole" means "not at liberty from all confinement but at liberty from confinement on the particular sentence for which the convict is being reentered as a parole violator." *Id.* at 683 (quoting *Haun v. Cavell,* 190 Pa.Super. 346, 154 A.2d 257, 261 (1959)), *cert. denied,* 363 U.S. 855, 80 S.Ct. 1618, 4 L.Ed.2d 1737 (1960). It went on to explain that there is a need to determine whether "the restrictions on [parolee's] liberty [at the rehabilitation center] were the equivalent of incarceration" entitling him to "credit for the time spent in the program." *Id.* at 683.

The Department of Corrections operates community corrections centers, which it operates, and community corrections facilities, which the Department contracts with a private party to operate. In each case, the Department assigns prisoners, and the time spent in those community corrections centers or facilities counts as time served. The Board also sends individuals that it has paroled to these facilities directly out of prison as a condition of parole (if they do not agree to go to the facility, they stay in prison), but do not receive time, unlike prisoners, for time spent in those facilities against their sentence. Because, unlike the majority, who would look at every restriction on a parolee in those facilities to determine whether he is "at liberty on parole," I would leave that decision to the Department of Corrections; if it determines that time spent in those facilities is sufficiently restrictive "time served" for prisoners, it is sufficiently restrictive that it should, correspondingly, count as time served for parolees.

The last time we addressed this issue was in *Harden v. Pennsylvania Board of Probation and Parole,* 980 A.2d 691 (Pa. Cmwlth.2009).[2] Harden was based on an approach where we looked at factors such as whether a facility is sufficiently restrictive so as to be equivalent to incarceration by determining whether a facility is locked or secured and whether a resident is able to leave the facility without being restrained or escorted and can be charged with "escape" if he or she leaves the facility. *Meleski v. Pennsylvania Board of Probation and Parole,* 931 A.2d 68 (Pa. Cmwlth.2007), *appeal denied,* 596 Pa. 736, 945 A.2d 173 (2008); *Figueroa v. Pennsylvania Board of Probation and Parole,* 900 A.2d 949 (Pa.Cmwlth.2006); *see also Williams v. Pennsylvania Board of Probation and Parole* (Pa.Cmwlth., No. 1412 C.D. 2013, filed March 26, 2014), 2014 WL 1259128 (unreported); *Hontz v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 1345 C.D. 2012, filed April 19, 2013), 2013 WL 3973702 (unreported).

Because, under *Cox,* a parolee has the burden to establish that the program that constituted sufficient restrictions on his or her liberty is sufficient to warrant credit against his or her sentence, *Harden's* primary criticism of giving time automatically for time served in community corrections

---

**1.** *Former* Act of August 6, 1941, P.L. 861, *as amended, formerly* added by Section 5 of the Act of August 24, 1951, P.L. 1401, *as amended.* The Parole Act was repealed by the Act of August 11, 2009, P.L. 147, No. 33. Similar language is now codified at 61 Pa.C.S. § 6138(a)(1), (2), as set forth above.

**2.** *Harden* was filed under Section 256(b) of the Internal Operating Procedures of this Court, 210 Pa.Code § 69.256(b), because of an equal split in the vote of the Commissioned Judges.

centers or facilities is that if parolees were allowed to receive credit against time spent in those facilities, it removes a parolee's burden to rebut the presumption that he or she was not at liberty on parole. *See Harden,* 980 A.2d at 702. To overcome this criticism, we should adopt the reasoning set forth in Judge Friedman's concurring opinion in *Torres v. Pennsylvania Board of Probation and Parole,* 861 A.2d 394, 402 (Pa.Cmwlth.2004).

After pointing out that inmates serving sentences of incarceration always receive credit for time spent in community corrections facilities, Judge Friedman cogently pointed out that it is irrelevant that a parolee is placed in a community corrections facility cannot be charged with "escape" because "escape" is a "legal matter and not relevant to the nature of the confinement itself." *Torres,* 861 A.2d at 403.[3]

Judge Friedman goes on to state:

By definition, a [CCF] is a "minimum security ... facility operated by the [Department of Corrections] for the purpose of facilitating special programs." 37 Pa.Code § 91.1. A [CCF] residency program is a prerelease program with a "custodial structure." 37 Pa.Code § 94.2(c)(1). A qualified inmate serving a sentence of incarceration may be placed in a [CCF] residency program to serve some of that sentence. *See* 37 Pa.Code §§ 94.2(c)(1) & 94.3(a)(2)(i) (setting time-served requirements for placement in a CCC residency program).

Certainly, then, to an inmate who is not on parole, a [CCF] residency is the equivalent of incarceration. *On this basis, I suggest that to meet their burden of proof ... parolees may present evidence to establish that the restrictions on liberty are identical for parolees and inmates at a [CCF]. Given such evidence, I would conclude that the parolee is entitled to credit towards his sentence for time spent at the [CCF].*

*Id.* at 402 (citation and footnotes omitted and emphasis added.)

While the Director of the community corrections facility testified that while pre-release inmates and parolees were both at the facility, the programming was completely different for the pre-release inmates, but offered no explanation on what was the difference in the programming. In any event, just because there is different programing for a parolee or an inmate at the same facility does not go to the nature of the confinement but how they are "programmed." In any event, the only difference in "programming" in this record appears to be that inmates can have extended furloughs to visit family while parolees cannot.

The approach taken in *Harden* and those cases on which it relied considered each factor to determine if the community corrections facility is the equivalent of incarceration, thereby making this Court the arbiter of what is a prison. Such an approach may be appropriate when a person is confined in a facility such as a drug and alcohol facility that serves parolees as well as private patients.[4] However, such an

---

**3.** Judge Friedman explained:

[E]lectronic home monitoring is "official detention," and thus, a person can be charged with escape for removing oneself from electronic home monitoring. *Commonwealth v. Wegley,* [574 Pa. 190, 829 A.2d 1148 (2003)]. However, electronic home monitoring is *not* "imprisonment," a synonym for the word incarceration. *Com-*

*monwealth v. Kriston,* [527 Pa. 90, 588 A.2d 898 (1991)]; Black's Law Dictionary 775 (8th ed. 2004). Thus, based on current case law, some individuals who are not incarcerated may be charged with escape.

*Torres,* 861 A.2d at 403 n. 4 (emphasis in original).

**4.** Credit, though, has been granted by both our Supreme and Superior Courts which have

approach is not appropriate for us to determine whether a facility is the functional equivalent of a prison when that facility has already been determined to be a prison by the Department of Corrections.

Consequently, if a parolee establishes that he or she has the same restrictions as inmates in a Department of Corrections' facility, then the parolee has met the burden of proving that the conditions are sufficiently restrictive to be entitled to credit against sentence for time spent in a community corrections facility. It simply is illogical to say that one person who is in a community corrections facility receives credit because that person has the status as an inmate, and another person who is required to live at the facility under the same conditions as an inmate does not. Such a test gives deference to the Department of Corrections' determination of what constitutes incarceration that satisfies an inmate's sentence and does not rely on an analysis of some notion of what a court believes "real" incarceration looks like.[5]

Because I would vacate the decision and remand to allow Medina to establish that he had the same restrictions while serving in the community corrections facility as inmates who the Department of Correc-

tions sent to serve time, I respectfully dissent.

Judges RENÉE COHN JUBELIRER and PATRICIA A. McCULLOUGH join in this dissenting opinion.

---

found that a DUI offender in a private alcohol center that has a restrictive environment—where the offender is required to reside at the facility during the time he participates in the program and places some restriction on the offender's freedom of movement—qualifies as "imprisonment" under 75 Pa.C.S. § 3804 (relating to penalties) and that time counts against the offender's sentence. *Commonwealth of Pennsylvania v. Conahan*, 527 Pa. 199, 589 A.2d 1107 (1991); *Commonwealth v. Usher*, 264 Pa.Super. 435, 399 A.2d 1129 (1979) (alcohol rehabilitation); *Commonwealth v. Mallon*, 267 Pa.Super. 163, 406 A.2d 569 (1979) (alcohol rehabilitation); *Commonwealth v. Jones*, 211 Pa.Super. 366, 236 A.2d 834 (1967) (mental institution).

5. The majority asserts that if we gave credit for time served in a community corrections facility, it could have "absurd consequences" because if it so happens that at the time that a parolee was placed in the facility or only for part of the time he was in the facility, the parolee almost happenstance would not receive credit for time served in those facilities. That misapprehends the test that I propose which does not involve whether prisoners were there at a particular day—if a facility is operated by the Department of Corrections for the housing of prisoners and a parolee is placed there, if the conditions of confinement would be the same as if a prisoner was placed there, the parolee would receive credit against his sentence.