# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daryl S. Provance,                                      :
                              Petitioner                :
                                                        :
                    v.                                  :        No. 547 C.D. 2017
                                                        :        Submitted: January 12, 2018
Pennsylvania Board of Probation                         :
and Parole,                                             :
                              Respondent                :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED: March 15, 2018**


Before us is yet another challenge to a Pennsylvania Board of Probation and Parole (Board) decision denying a convicted parole violator (CPV) credit for time spent at a community corrections center[1] (CCC) on the ground the restrictions there are not the equivalent of incarceration despite pre-release inmates at the same facility receiving credit against their sentences. In this latest case, Daryl Provance (Provance) petitions for review of an April 19, 2017 decision of the Board (April Decision), which affirmed the Board's decision mailed July 22, 2016 (July Decision) that denied Provance credit against his maximum sentence for more than a year he

---

[1] The Prisons and Parole Code (Parole Code) defines "community corrections center" as "[a] residential program that is supervised and operated by the [D]epartment [of Corrections]." Section 5001 of the Parole Code, 61 Pa. C.S. § 5001.

spent at Gateway Braddock Community Corrections Center (Gateway). On appeal, Provance argues that since pre-release inmates get credit towards their sentences for time spent at Gateway, parolees, such as himself, should also get credit for time spent there since pre-release inmates and parolees are subject to the same constraints. Although Provance offers a compelling argument, based upon this Court's binding precedent, we are constrained to affirm.

## I.    Factual Background

The relevant facts of this case are not in dispute. While serving an 8 year, 10 month- to 25-year aggregated sentence for aggravated assault and terroristic threats, the Board granted Provance parole on June 1, 2010. At the time, his parole violation maximum date was June 29, 2025. In January 2012, after testing positive for controlled substances and following an administrative conference with his parole agent, he was instructed to complete the Halfway Out Program at Progress Community Corrections Center.[2] Upon his successful completion of the program, he was transferred to Gateway. He resided at Gateway from May 7, 2012 until June 26, 2013.

In December 2014, Pennsylvania State Police at Uniontown arrested Provance on a variety of new charges, including driving under the influence, aggravated assault, and recklessly endangering another person. Following his conviction on these new charges, the Board recommitted Provance as a CPV and recalculated his parole violation maximum date to November 26, 2029.

---

[2] Provance received credit for the time he spent at this facility.

Provance filed a pro se administrative appeal challenging, *inter alia*, the recalculation of his maximum date. The Board scheduled an evidentiary hearing to determine whether he was entitled to credit for the time he resided at Gateway.

At the hearing, Provance, now represented by counsel, testified on his own behalf. He testified that Gateway houses both parolees and pre-release inmates and that both are governed by the same rules and regulations. He also testified that he was attempting to obtain Supplemental Security Income (SSI) but was denied because he was a resident of Gateway. In addition, Provance presented three photographs depicting the physical layout of Gateway, including what he described as a fenced-in area. On cross-examination by his parole agent, Provance admitted that, if he was physically able to work, he would have been permitted to leave Gateway to look for work. He also acknowledged he was allowed to leave for medical and other appointments without being escorted or accompanied by anyone at Gateway. According to Provance, he was permitted to go out and come back as he pleased; all he had to do was fill out a paper with a phone number stating where he was going and a time. He further admitted that nothing prevented him from leaving Gateway if he wanted to leave, he could just push any door open and go outside, and that the area he claimed was fenced in did have an open area for vehicles to drive in and out, which residents could likewise access from the recreational area.

Jeffrey Filia, assistant director of operations at Gateway, testified for the parole agent. He disagreed that there was no difference between parolees and pre-release inmates. He explained that pre-release inmates are residents who came to Gateway from a state correctional institution and are still serving their sentences. According to Mr. Filia, their supervision is "very intense." (Hr'g Tr. at 29, Certified Record (C.R.) at 206.) If a pre-release inmate fails to return to Gateway or leaves

3

without authorization, it is considered an escape. By contrast, Mr. Filia explained that parolees would be absconding and the Board would be notified. Mr. Filia confirmed that although there is a fence, there is an opening to the parking lot. He said the same area is used for recreation and residents are free to walk in and out. Mr. Filia explained that if a resident attempts to leave, Gateway has "a strict hands-off policy," meaning that while staff will attempt to try to talk the resident out of leaving, staff will not physically stop the resident. (Hr'g Tr. at 31-32, C.R. at 208-09.) Mr. Filia testified that residents are permitted between six to eight hours per day to search for employment, and although they are "asked to provide some sort of accountability as to where they [are] going," Gateway does not check up on the person unless there is some reason to doubt the person's truthfulness. (Hr'g Tr. at 32-34, C.R. at 209-11.) According to Mr. Filia, Gateway is "not a prison facility. [It is] a correctional facility. . . . [T]here are no barriers on the doors. There are no barriers on the windows. Each resident is free to come and go as they [sic] please, without us hindering their [sic] direction." (Hr'g Tr. at 34, C.R. at 211.)

Following the hearing, the Board issued its July Decision, denying Provance credit for his time at Gateway. The Board found, as follows:

> There was sufficient testimony that [Gateway] was not a secure facility. The doors were not locked to prevent residents from leaving and the windows were not barred closed. Residents could choose to exit the building . . . without permission and staff were prohibited from stopping them. Additionally, there were several exits that residents could exit the building by merely pushing on the push bar. Residents were permitted signout liberties for employment, community service, social passes, job searches, medical, and a variety of other appointments. Staff did not escort nor follow residents while they were in the community. Staff were also prohibited from physically preventing residents from leaving. Although a partial fence was around the parking area, this area was also the recreation area and residents could enter into and exit this area at will.

4

(July Decision at 2, C.R. at 219.)

Based upon these findings, the Board concluded that "Provance did not meet the burden of proving that [Gateway] was the equivalent of incarceration and should not be awarded credit for his backtime." (*Id.* at 3, C.R. at 220.)

Provance filed another administrative remedies form seeking review of the July Decision. The appeal panel agreed with the Board's findings in its July Decision and affirmed. (April Decision, C.R. at 225.) This appeal followed.[3]

## II. Parties' arguments

On appeal, Provance argues that he should have received credit for the time he spent at Gateway because his time spent there was the equivalent of incarceration. Specifically, he argues that while at Gateway, he was subjected to the same constraints on his liberty as pre-release inmates, and if these inmates were incarcerated for the purposes of serving their sentences, he similarly should be considered incarcerated. Counsel for Provance acknowledges that the case law is not favorable to his client but requests the Court reconsider its past holdings.

The Board responds that it did not act arbitrarily and appropriately exercised its discretion when it decided Provance was not entitled to credit for his time at Gateway. It argues there was sufficient testimony to establish that parolees at Gateway were not confined in any way, and certainly not in a manner sufficient to constitute the equivalent of incarceration.

---

[3] On appeal, our "review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence." *Miskovitch v. Pa. Bd. of Prob. and Parole*, 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013).

5

## III.    Analysis

Section 6138(a)(2) of the Prisons and Parole Code (Parole Code) provides that parolees who are recommitted as a CPV "shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and . . . shall be given no credit for the time at liberty on parole." 61 Pa. C.S. § 6138(a)(2).  The Parole Code does not define "at liberty on parole," but our Supreme Court provided guidance in the seminal case, *Cox v. Pennsylvania Board of Probation and Parole*, 493 A.2d 680 (Pa. 1985).  In *Cox*, the Pennsylvania Supreme Court explained that the parolee bears the burden of showing that the specific facility had sufficient restrictions on his liberty to warrant time credit.  *Id.* at 683.    In that case, the Supreme Court found the record was insufficient to determine "whether the restrictions on [the parolee's] liberty [at the facility] were the equivalent of incarceration" and remanded for development of the factual record.[4]  *Id.*  The Supreme Court further cautioned that a court reviewing the Board's determination should not interfere with that decision unless the Board acts arbitrarily or plainly abuses its discretion.  *Id.*

Each claim for time credit is to be evaluated on a case-by-case basis.  *Torres v. Pa. Bd. of Prob. and Parole*, 861 A.2d 394, 397 (Pa. Cmwlth. 2004).  Yet, since *Cox*, our Court has further defined the parameters of the "equivalent of incarceration" standard.  For instance, we have stated "[t]he most important factors are 'whether the patient, or resident, is locked in and whether the patient may leave without being physically restrained.'"  *Figueroa v. Pa. Bd. of Prob. and Parole*, 900

---

[4] Although *Cox* involved an in-patient hospital drug treatment program, we have applied the "equivalent of incarceration" standard to other types of facilities, including CCCs.  *See, e.g.*, *Figueroa v. Pa. Bd. of Prob. and Parole*, 900 A.2d 949 (Pa. Cmwlth. 2006); *Wagner v. Pa. Bd. of Prob. and Parole*, 846 A.2d 187 (Pa. Cmwlth. 2004).

A.2d 949, 952 (Pa. Cmwlth. 2006) (quoting *Detar v. Pa. Bd. of Prob. and Parole*, 890 A.2d 27, 31 (Pa. Cmwlth. 2006)). Those factors were recently reaffirmed in *Medina v. Pennsylvania Board of Probation and Parole*, 120 A.3d 1116, 1120-21 (Pa. Cmwlth. 2015). Furthermore, in *Harden v. Pennsylvania Board of Probation and Parole*, we stated:

> Facilities are not prison-like if they lack fences or have fences with gates that open from the inside; have doors and windows locked from the outside, not the inside, to prevent entry not exit; lack guards stationed to prevent residents from leaving; and do not attempt to use physical force by staff members to stop an inpatient from leaving.

980 A.2d 691, 699 (Pa. Cmwlth. 2009).

Far more often than not, we have found the characteristics of a particular program or facility are not restrictive enough to constitute the "equivalent of incarceration." *See Medina*, 120 A.3d at 1119-20 (reciting both reported and unreported decisions regarding same). Provance recognizes that the deck is stacked against him yet persuasively argues that when pre-release inmates serving their sentences at the same facilities **under the same terms and conditions of confinement** are receiving credit towards their sentences, parolees, such as himself, should similarly receive time credit.

Unfortunately for Provance, this Court has repeatedly rejected this exact same argument on a number of occasions. *See id.* at 1122 (listing such cases). In doing so, this Court has frequently cited one distinction between pre-release inmates and parolees: pre-release inmates who leave a facility without permission and do not return are charged with the crime of escape by the police, whereas parolees who leave a facility without permission and do not return are charged with violating the terms of their parole by their parole agent. *See, e.g.*, *Wagner v. Pa. Bd. of Prob. and*

7

*Parole*, 846 A.2d 187 (Pa. Cmwlth. 2004); *Meehan v. Pa. Bd. of Prob. and Parole*, 808 A.2d 313 (Pa. Cmwlth. 2002).

Provance's arguments have not gone unnoticed, though. On a number of occasions, various members of this Court have questioned the logic of denying a parolee credit for time spent at a facility under the same conditions as a pre-release inmate at the same facility. Former Judge Friedman foresaw this issue in *Torres*. In her concurring opinion, she noted that "inmates serving sentences of incarceration **always** receive credit for time spent in CCC residency programs." 861 A.2d at 402 (Friedman, J., concurring) (emphasis in original). Because a pre-release inmate who is not on parole is considered incarcerated when residing at a CCC, she reasoned that parolees can satisfy their burden of proof under *Cox* by "present[ing] evidence to establish that the restrictions on liberty are identical for parolees and inmates at a CCC."[5] *Id.* As for the distinction that pre-release inmates are charged with escape for leaving a CCC when parolees are not, Judge Friedman thought the distinction was irrelevant to whether the individual should receive time credit. She explained that the relevant standard "under Cox is whether the **specific characteristics of the program** restrict liberty to such an extent that residency in the program is the equivalent of incarceration." *Id.* at 403 (emphasis in original). "[T]he result of such thinking is that parolees can **never** receive credit for time spent in a CCC because parolees can **never** be charged with escape." *Id.* (emphasis in original). Judge Friedman reiterated her view that "if pre-release inmates receive credit for their time [at a facility], then parolees should receive credit" in *Rodriguez v. Pennsylvania*

_____

[5] Provance advocates for adoption of Judge Friedman's position.

8

*Board of Probation and Parole* (Pa. Cmwlth., No. 200 C.D. 2008, filed Aug. 12, 2008) (Friedman, J., dissenting), slip op. at 4.[6]

On more than one occasion, now-Senior Judge Pellegrini has been a vocal opponent of treating pre-release inmates differently than parolees in terms of receiving credit for time spent at a CCC under identical restraints. *See, e.g.*, *Medina*, 120 A.3d at 1128 (Pellegrini, P.J., dissenting) ("It simply is illogical to say that one person who is in a community corrections facility receives credit because that person has the status as an inmate, and another person who is required to live at the facility under the same conditions as an inmate does not."); *Harden*, 980 A.2d at 708 (Pellegrini, J., dissenting) ("Because prisoners and parolees are subject to the same level of confinement and the same rules, and prisoners are given credit for time spent in these facilities, it would be irrational to hold that a stay at the facility is not the 'equivalent of incarceration' when the Department of Corrections has determined that it is incarceration.") Senior Judge Pellegrini has likewise found it irrelevant that parolees are not charged with escape. *Harden*, 980 A.2d at 703-04. In his dissent to *Medina*, he wrote it was inappropriate for this Court to act as "arbiter of what is a prison," which is what it is doing when it considers the various factors. 120 A.3d at 1127-28 (Pellegrini, P.J., dissenting). Judge McCullough and the undersigned joined in then-President Judge Pellegrini's dissent in *Medina*.

For the same reasons set forth by then-President Judge Pellegrini in his dissent to *Medina,* similar discontent with this issue was expressed most recently in *Johnson v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 2009 C.D. 2015, filed July 18, 2016), *petition for allowance of appeal denied*, 169 A.3d 1023 (Pa.

---

[6] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, unreported panel decisions issued by this Court after January 15, 2008 may be cited for their persuasive value but not as binding precedent. 210 Pa. Code § 69.414(a).

2016). However, given "this Court's binding decision in [*Medina*,]" the majority was constrained to affirm. *Id.*, slip op. at 9 n.6.

Until this Court revisits its prior holdings or the Supreme Court reverses this Court, we are, likewise, constrained here. The Board found that the doors and windows at Gateway were not secured; anyone could leave the program at any time; although there was a fence, it was only partial; residents could leave the facility unsupervised for appointments and to conduct job searches; and staff could not physically restrain anyone attempting to leave.[7] There is substantial evidence to support these findings. In fact, Provance admitted these facts. These findings support the Board's determination that Provance is not entitled to credit under *Cox* and its progeny for the time period he resided at Gateway because the conditions there were not sufficiently restrictive so as to be the "equivalent of incarceration."

## IV. Conclusion

Because the Board did not act arbitrarily or plainly abuse its discretion when it denied Provance credit for the time he spent at Gateway, its Decision is affirmed.

_____

**RENÉE COHN JUBELIRER,** Judge

---

[7] Although these conditions apply with equal force to both pre-release inmates, who receive credit towards their sentences, and parolees, like Provance, who do not, as discussed above, our precedent views them differently.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Daryl S. Provance,                                       :
                          Petitioner          :
                                                        :
              v.                             :   No. 547 C.D. 2017
                                                        :
Pennsylvania Board of Probation      :
and Parole,                                  :
                          Respondent       :

# **O R D E R**

    **NOW**, March 15, 2018, the Decision of the Pennsylvania Board of Probation and Parole, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge